## INTERCARGO INSURANCE COMPANY

v.

## MUNICIPAL PIPE CONTRACTORS, INC. et al.

2003-Ohio-7363.]

Court of Common Pleas of Ohio,
Civil Division, Franklin County.

No. 02CVH–04–3817.

Decided Nov. 18, 2003.

Williams & Petro Co., LLC, and John J. Petro, for plaintiff.

Santen & Hughes and J. Robert Linneman, for defendant Barrett Paving Materials, Inc.

Raymond L. Beebe, for defendants Municipal Pipe Contractors, Inc., Thomas J. Hughes, and Rebecca S. Hughes.

Jim Petro, Attorney General, and Mark E. Hayes, Assistant Attorney General, Transportation Section, for defendant Ohio Department of Transportation.

DAVID W. FAIS, Judge.

## I. PROCEDURAL BACKGROUND

{¶ 1} This matter is before the court pursuant to defendant Barrett Paving Materials, Inc.'s ("Barrett") motion for summary judgment filed March 20, 2003.

Plaintiff Intercargo Insurance Company ("Intercargo") filed its motion for summary judgment on March 22, 2003. Barrett filed its memorandum contra Intercargo's motion for summary judgment on April 21, 2003. Intercargo filed its memorandum contra Barrett's motion for summary judgment on April 18, 2003. Barrett also made a request for oral argument on its motion for summary judgment on March 22, 2003. Both parties agreed by entry filed on June 25, 2003, that no reply memoranda would be filed.

{¶ 2} A joint stipulation of facts between Barrett and Intercargo was filed on March 20, 2003. Attached to the stipulation of facts was a statement by defendant Ohio Department of Transportation ("ODOT") that it concurred with the joint stipulation of facts to the following extent: (1) with respect to Paragraph 18, the subject Affidavit for Claim was received and filed with defendant ODOT on March 21, 2002; and (2) defendant ODOT continues to deny the facts asserted in Paragraphs 10, 11, 17, 22, 26, 27, and 28 for want of knowledge or information upon which to base an opinion or belief. Furthermore, in its reply to Barrett's counterclaim and/or cross-claim, ODOT stated that it has the sum of $276,828.23 in its possession, which is due under the contract at issue in this case. ODOT also stated that it did not have an interest in contesting any factual matters in the action other than the amount of money it has in its possession that is due under the contract.

{¶ 3} Neither defendant Municipal Pipe Contractors, Inc. ("Municipal") nor defendants Thomas J. Hughes ("Mr. Hughes") and Rebecca S. Hughes ("Mrs. Hughes") have filed any motions or memoranda contra these motions for summary judgment.

## II. FACTS

{¶ 4} ODOT, which is a public agency authorized by statute to construct, repair, and maintain public roads in the state of Ohio, administered a public improvement project known as Project 186 ("the Project"), in Shelby County. ODOT contracted with Municipal, in which Municipal agreed to serve as the general contractor on the Project. Pursuant to R.C. 5525.16, Municipal sought a bond for the Project and executed a payment bond on May 9, 2000, in the penal sum of $3,058,000.00 ("the Bond"), with Intercargo. Under the terms of R.C. 5525.16, Intercargo became bound for payments on the Project as the surety. Municipal delivered the Bond to ODOT and the Bond was subsequently approved and accepted by ODOT. In consideration for providing the Bond for the Project, Municipal and Mr. and Mrs. Hughes executed and delivered an agreement of indemnity ("Indemnity Agreement") to Intercargo.

{¶ 5} On or about May 17, 2000, Municipal and Barrett entered into a contract ("Subcontract"), in which Barrett agreed to furnish labor, materials, supplies,

equipment, and supervision in the installation of asphalt paving ("the Work") for the Project. Barrett timely and satisfactorily completed the Work for the Project, and its performance was approved by both Municipal and ODOT. Municipal received payment for the sum owed to Barrett from ODOT, which was the fair value of the Work in the amount of $462,851.35. Despite demand by Barrett for payment of Work, Municipal failed to pay Barrett the amount due under the Subcontract within ten days of receipt of payment from ODOT.

{¶ 6} Pursuant to R.C. 1311.26, Barrett filed an Affidavit for Claim of Public Improvement Fund Lien with ODOT in which Barrett claimed a lien ("Lien") against funds held by ODOT for the Project and against funds due or to become due and owing to Municipal for the Project. The Lien was in the amount of $505,527.68, which constituted the payment owed for the Work in the amount of $462,851.35 and interest of 18 percent on the principal amount owed pursuant to Ohio's Prompt Payment Act, R.C. 4113.61, for Municipal's failure to pay Barrett within ten days after demand was made for payment of the Work.

{¶ 7} Following its obligations under the Bond, Intercargo paid Barrett a total amount of $466,851.35, which included the principal amount of $462,851.35 and ten percent interest on the principal in the amount of $4,000. In consideration for the payment, Barrett assigned a partial interest in the Lien in the amount of $466,851.35, with Barrett retaining a claim on the Lien in the amount of $38,676.33.

{¶ 8} Next, Intercargo and Municipal asked Barrett to perform additional work on the Project ("Additional Work"). In order to induce Barrett to return to the Project to complete the Additional Work, Mr. Hughes, who was an officer and shareholder of Municipal, executed a guaranty ("Guaranty"), in which Mr. Hughes agreed to pay Barrett the outstanding interest ("Accrued Interest") in the amount of $51,686.61 as of July 5, 2001, on or before October 1, 2001, if Municipal failed to pay such interest.

{¶ 9} As further incentive for Barrett to return to the Project to perform the Additional Work, Intercargo provided Barrett with an agreement for prompt payment dated June 27, 2001 ("Prompt Payment Agreement"). The agreement first states that Intercargo's obligation under the bond payment as to interest was limited and that interest on the previous amount owed to Barrett for the Work on the Project was calculated at a ten percent interest rate. Next, the agreement states that upon payment of the principal amount owed and the ten percent interest on the principal, Barrett will return to the Project to perform the Additional Work requested. Upon completion and acceptance of the Additional Work, Intercargo agreed to make payment to Barrett for the remaining amount owed within ten business days.

{¶ 10} In reliance on both the Guaranty and Prompt Payment Agreement, Barrett returned to the Project and completed the Additional Work. The Additional Work was accepted by Municipal and ODOT. However, Municipal failed to pay Barrett the amount owed for the Additional Work. Subsequently, Intercargo, as surety on the Project, paid Barrett for the Additional Work. Municipal and Mr. Hughes have both failed to pay Barrett for the 18 percent Accrued Interest under R.C. 4113.61. Municipal and Mr. and Mrs. Hughes have also failed to pay Intercargo for the payments on the Project pursuant to the Indemnity Agreement.

## III. STANDARD OF REVIEW

{¶ 11} Summary judgment is a procedural device utilized to terminate litigation and to avoid a formal trial where no issues of fact exist to adjudicate. *Norris v. Ohio Std. Oil Co.* (1982), 70 Ohio St.2d 1, 2, 24 O.O.3d 1, 433 N.E.2d 615. Caution must be used when granting summary judgment, construing evidence, and resolving all doubts in favor of the nonmoving party and against the moving party. Id.

{¶ 12} Pursuant to Civ.R. 56(C), summary judgment is appropriate upon the showing "(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in [that party's] favor." *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 375 N.E.2d 46. The moving party bears the initial burden of demonstrating that no genuine issues of material fact exist on an essential element of the nonmoving party's claim. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. If the moving party cannot meet this burden, summary judgment must be denied. Id. If the moving party does satisfy its initial burden, the nonmoving party has a reciprocal burden to demonstrate by affidavit, or as otherwise provided in Civ.R. 56(C), specific facts that show a genuine issue for trial. Id. However, if the nonmoving party fails to demonstrate a genuine issue of material fact, summary judgment, if appropriate, shall be entered against the nonmoving party. Id.

## IV. LAW AND ANALYSIS

### A. Barrett is Not Entitled to Payment of Interest From the Funds Withheld by ODOT Pursuant to Its Lien

{¶ 13} R.C. 1311.26 et seq. provides the statutory framework under which subcontractors may acquire liens for completed work involving public improve-

ment projects. *Poenisch v. Kingsley–Dunbar, Inc.* (1990), 64 Ohio App.3d 699, 704, 582 N.E.2d 1071. Specifically, R.C. 1311.26 states:

> "Any subcontractor, materialman, or laborer who is performing or has performed labor or work * * * for any public improvement provided for in a contract between the public authority and a principal contractor, and under a contract between the subcontractor * * * may serve the public authority an affidavit stating the amount due and unpaid for the labor and work performed and material furnished, when the last of the labor or work was performed and when the last of the material was furnished with all credits and setoffs thereon."

{¶ 14} The affidavit should include an itemized statement of the labor performed or materials furnished. See *Poenisch,* 64 Ohio App.3d at 704, 582 N.E.2d 1071. After receiving the affidavit on the subcontractor's claim, "the public authority shall detain from the principal contractor or from the balance of the funds remaining in the contract with the principal contractor, an amount, up to the balance remaining in the contract that does not in the aggregate exceed the claim or claims." R.C. 1311.28.

{¶ 15} "Pursuant to this statutory framework, a materialman who is owed money by the general contractor only may retain a lien upon payments that are due to the principal contractor." *Poenisch,* 64 Ohio App.3d at 704, 582 N.E.2d 1071. Accordingly, the lien does not attach to the funds held by the public authority until those funds are due to the principal contractor, even though the lien is properly filed. Id.

{¶ 16} Also stemming from this statutory framework is the principle that as a lien claimant, the rights of the subcontractor are subordinate to the rights of the principal contractor, since the subcontractor's rights are based upon the contract between itself and the principal contractor, and are therefore subordinate to the contract. *State ex rel. Gen. Elec. Supply Co. v. Jordano Elec. Co.* (1990), 53 Ohio St.3d 66, 69, 558 N.E.2d 1173. "The subcontractor, to 'the extent of his demand, takes the place of the contractor, so that, if the owner, as against the latter, can withhold the payment of the moneys earned, he can do so, in like manner, against the demands of the former. The test is, whether a suit for the money in question will lie by the [general] contractor against the owner.'" *Lee Turzillo Contracting Co. v. Cincinnati Metro. Hous. Auth.* (1967), 10 Ohio St.2d 5, 12, 39 O.O.2d 3, 225 N.E.2d 255 (quoting *Reeve v. Elmendorf,* 38 N.J.L. 125, 130, 1875 WL 6983). Thus, the only funds that may attach to a valid subcontractor's lien are those that are owed to the principal contractor. See *Poenisch,* 64 Ohio App.3d at 704, 582 N.E.2d 1071.

{¶ 17} Barrett argues that it is entitled to interest pursuant to R.C. 4113.61 because modern lien claimants have the same right to interest when the interest stems from a statutory right that mechanic's lien claimants have historically maintained to prejudgment interest under R.C. 1343.03. Barrett also argues that because the lien is against funds due and owing to the principal contractor, it, as the subcontractor, may recover interest against the funds in a suit for foreclosure on a public improvement lien.

{¶ 18} However, Barrett does not explain how the funds it holds a lien against are due and owing to Municipal as the principal contractor. The funds in which Barrett holds a lien against are for interest in the amount of 18 percent based upon Municipal's failure to pay Barrett the amount owed for labor and materials under R.C. 4113.61, the Ohio Prompt Payment Act. These funds would not be due and owing to Municipal as the general contractor, since they do not constitute performance or materials used pursuant to the contract with ODOT for the Project. These funds would also not be owed to Municipal by the public authority, since ODOT did not owe the money to Municipal for any failure on its part to promptly pay Municipal. Because a suit brought by Municipal against ODOT for this interest would not lie, Barrett cannot step into the shoes of Municipal to collect the interest from the ODOT fund. Therefore, Barrett is not entitled to collect payment of the interest from the funds withheld by ODOT.

### B. Barrett is Not Entitled to Judgment Against Intercargo for the Unpaid Accrued Interest

{¶ 19} The Ohio Supreme Court in *Dean v. Seco Elec. Co.* (1988), 35 Ohio St.3d 203, 206, 519 N.E.2d 837, concluded that "absent an agreement to the contrary, a surety is not liable for a penalty assessed against its principal for the wrongful acts of the principal where there has been no showing that the surety ratified the principal's wrongful acts or that the surety is guilty of actual malice, fraud, or oppression." First, the court recognized that under established Ohio law, a surety is entitled to rely upon the letter of its undertaking and that since a bond is a contract, it must be construed according to the "fair import of the language used." Id., 35 Ohio St.3d at 205, 519 N.E.2d 837.

{¶ 20} Second, the court reasoned that the statute at issue, R.C. 4115.10, was penal in nature and, as such, had to be strictly construed. Id., 35 Ohio St.3d at 205, 519 N.E.2d 837. The statute did not refer to the obligations of sureties but only to the obligations and liability of employers for the statutory penalty, attorney fees, and costs for the employers' failure to pay prevailing wages. Id., 35 Ohio St.3d at 206, 519 N.E.2d 837. In the absence of any statutory obligations on the sureties, the court concluded that the sureties' duties were governed by contract. Id. Upon examination of the language of the labor and material bond at

issue, the court concluded that the defendant agreed to act as surety for the debts incurred for labor and materials only, since the bond did not contain language demonstrating that it covered claims for statutory penalty, attorney fees, or costs. Id.

{¶ 21} Third, the court reasoned that imposition of the penalty on sureties would not serve the purpose of the statute. Id., 35 Ohio St.3d at 206, 519 N.E.2d 837. Since the surety did not have control over the principal and was acting in no other capacity than as surety, it could not prevent the statutory penalty. The court further found that the surety did not authorize, participate in, or ratify the failure of the principal to pay prevailing wages. Id. Since there was also no showing of malice, fraud, or oppression on the part of the surety, the court concluded that under the terms of the bond and the language of R.C. 4115.10, the surety was not required to pay the penalty imposed upon its principal. Id., 35 Ohio St.3d at 206–207, 519 N.E.2d 837.

{¶ 22} Likewise, the statute at issue in this case, R.C. 4113.61, is also penal in nature and must be strictly construed. Black's Law Dictionary defines "penalty" as "a sum of money which the law exacts payment of by way of punishment for doing some act which is prohibited or for not doing some act which is required to be done." Black's Law Dictionary (5th Ed.Rev.1979) 1020. A penalty provision operates to compel the performance of an act and usually becomes effective only in the event of a default upon which forfeiture is compelled without regard to any actual damages sustained by the nonbreaching party. See id. In civil actions, "a 'statutory penalty' is a pecuniary punition, imposed for doing some act which is prohibited or for omitting to do some act which is required to be done." Id. at 1266.

{¶ 23} R.C. 4113.61 provides:

"(A)(1) If a subcontractor or materialman submits an application or request for payment or an invoice for materials to a contractor in sufficient time to allow the contractor to include the application, request, or invoice in his own pay request submitted to an owner, the contractor, within ten calendar days after receipt of payment from the owner for improvements to property, shall pay to the:

"(a) Subcontractor, an amount that is equal to the percentage of completion of the subcontractor's contract allowed by the owner for the amount of labor or work performed.

"* * *

"If the contractor fails to comply with division (A)(1) of this section, the contractor shall pay the subcontractor or materialman, in addition to the payment due, interest in the amount of eighteen per cent per annum of the

payment due, beginning on the eleventh day following the receipt of payment from the owner and ending on the date of full payment of the payment due plus interest to the subcontractor or materialman."

{¶ 24} The purpose of the statute is to encourage contractors to promptly pay their subcontractors. *Masiongale Electrical–Mechanical, Inc. v. Constr. One, Inc.*, Franklin App. No. 02AP–138, 2002-Ohio-4736, 2002 WL 31013622, ¶ 30, appeal pending in Supreme Court case No. 2002–1861. In the event that contractors do not promptly pay, they are penalized at the rate of 18 percent until such payment is made. See R.C. 4113.61. While the statute does not use the words "penalize" or "penalty," it is penal in nature, since it imposes a pecuniary fine of 18 percent interest, which is well over the average market rate, for failing to perform an act that is required. Moreover, once the contractor fails to pay within ten days and interest begins to accrue, R.C. 4113.61 allows the trial court to impose a sanction of attorney fees after considering all relevant factors. See R.C. 4113.61(B)(1); *Wild–Fire, Inc. v. Laughlin* (Mar. 9, 2001), Clark App. No. 2000 CA 51, 2001 WL 227395, at * 5. Thus, the statute is penal in nature and must be strictly construed.

{¶ 25} In this case, the purpose of the statute would not be served by imposing liability for the interest onto Intercargo. The purpose of the statute is to provide an incentive for contractors to promptly pay their subcontractors. Under R.C. 5525.16, a surety has 60 days to pay the indebtedness of the contractor after the subcontractor has submitted a statement to the surety in the amount due for performance and materials before the subcontractor may commence action upon the bond. R.C. 5525.16(C). Since the surety has 60 days to pay the amount due to the subcontractor before an action may even be commenced to collect payment, as opposed to just ten days for the contractor before interest begins to accrue, invoking the fine for interest on the surety would not further the purpose of the Prompt Payment Act. Thus, the subcontractor would not get payment any sooner, either from the contractor or from the surety, by imposing liability on the surety.

{¶ 26} Additionally, the surety has no control over the actions of the contractor in failing to promptly pay the subcontractor, no does the surety have control over when the subcontractor submits the statement of amounts owed under R.C. 5525.16, which triggers the surety's obligation to pay under the bond. The subcontractor may decide to wait a significant amount of time to submit the statement in order to continue to accrue the 18 percent interest allowed under R.C. 4113.61. Thus, imposition of payment of the interest on the surety would not serve the purpose of the statute.

{¶ 27} Moreover, the statute does not contain any language obligating the surety to be liable for the interest upon the occurrence that the contractor does not promptly pay. The only entity referenced in the interest-penalty provision of

R.C. 4113.61 is the contractor. Nowhere in the statute does it state that the owner or surety will be liable for the 18 percent interest in the event that the principal contract defaults. Therefore, since there is no statutory duty placed on Intercargo as the surety to pay the interest allegedly due to Barrett, the court must look to the contractual duties of Intercargo.

{¶ 28} Barrett points to the language in the Bond between Municipal and Intercargo, which states that the obligations of Intercargo will be satisfied "if the principal shall pay all lawful claims of any subcontractor." Barrett argues that Intercargo is obligated to pay the interest under the Prompt Payment Act because Barrett holds a "lawful claim" against Municipal under R.C. 4113.61, which arose on the Project covered by Intercargo's Bond.

{¶ 29} However, the court in *Dean* rejected a similar phrase with the language of "sum or sums as may be justly due claimant." 35 Ohio St.3d at 205, 519 N.E.2d 837. The court reasoned that interpreting that phrase to mean that the surety was supposed to pay any additional amounts due to employees for the employer's failure to pay prevailing wages disregarded the entire language of the bond, which only obligated the surety to pay for labor and materials used. Id.

{¶ 30} The language in the Bond at issue here also demonstrates that payment is to be made by the surety for performed labor or furnished materials and not for any penalty imposed against Municipal. The Bond states that Intercargo will act as surety for the claims made by subcontractors "who have performed labor or furnished material, fuel, tools or machinery and for the use of and repairs to machinery and equipment used in carrying forward, performing or completing said contract." This language indicates that Intercargo agreed to act as surety only for the debts arising from the labor and materials used to perform or complete the Project. Furthermore, the Bond is required under R.C. 5525.16 for the purpose of payment of the work performed and materials furnished on a project for public improvement in the event that the principal does not or cannot make such payments. Thus, the Bond does not impose liability for payment of the interest under R.C. 4113.61 on Intercargo as surety.

{¶ 31} Last, the Prompt Payment Agreement between Intercargo and Barrett does not create liability on Intercargo to pay the 18 percent interest mandated by R.C. 4113.61 but demonstrates that Intercargo is not contractually liable for payment. The agreement states:

"As advised earlier, the obligation under the payment bond as to interest is limited. Interest begins accruing the 61st day of the first notice of the claim. XL received notice on March 18, 2001, and therefore, the 61st day is May 28, 2001. Interest has been calculated until June 29, 2001, and amounts to $4,183.03. (The per diem amount of interest is $126.76 based on a principal

amount of $462,668.32 and a 10% rate.) * * * Upon receipt of payment, Barrett agrees to immediately return to the job and complete their work. Upon completion and acceptance of their work, and all documentation indicating such is provided to XL, payment for all remaining amount owed will be made by XL with ten (10) business days. * * * If these terms are agreed to, the two checks and the corresponding releases will be forwarded via overnight courier. * * * If your clients do not accept this offer, then arrangements will be made to hire another contractor to complete the work."

{¶ 32} Under the terms of this agreement, Intercargo specifically stated that its obligation as to interest under the payment bond was limited, and restricted its liability for interest paid to Barrett on the principal amount to ten percent. Barrett agreed to these terms by returning to the Project and completing the requested Additional Work. The Prompt Payment Agreement between Intercargo and Barrett specifically shows that Intercargo contractually limited its liability on interest to Barrett to ten percent on the initial amount owed and is not liable for the 18 percent penalty under Ohio's Prompt Payment Act.

### C. Municipal and Thomas J. Hughes are Liable to Barrett for Interest Under R.C. 4113.61

{¶ 33} Municipal entered into a Subcontract with Barrett for labor and materials on the Project, which Barrett satisfactorily completed. Once Barrett provided the invoice for the Subcontract Work to Municipal, the invoice was given to ODOT for payment of Barrett's performance. Municipal received payment from ODOT for the Subcontract Work but failed to make payment to Barrett within ten days of receipt as required by R.C. 4113.61. Barrett was paid by Intercargo on July 5, 2001, for the work performed under the Subcontract. Therefore, Barrett is entitled to payment of 18 percent interest from the eleventh day of payment to Municipal until July 5, 2001.

{¶ 34} Under the Guaranty agreement made between Barrett and Thomas J. Hughes, individually, Mr. Hughes agreed to make payment to Barrett for all monies owed to Barrett by Municipal and/or Intercargo in exchange for Barrett's return to the Project and completion of the work. Mr. Hughes also promised to pay the Accrued Interest, which was $51,686.86, on or before October 1, 2001, if Municipal had not paid that amount by that date. Therefore Mr. Hughes is individually liable to Barrett to pay the amount of Accrued Interest as set forth in the Guaranty agreement.

{¶ 35} In addition, Mr. Hughes is liable to Barrett for prejudgment interest at the rate of ten percent pursuant to R.C. 1343.03, which states that "when money becomes due and payable upon any bond, bill, note, or other instrument of writing * * * for the payment of money arising out of * * * a contract * * *, the

creditor is entitled to interest at the rate of ten per cent annum." Since Mr. Hughes entered into a Guaranty agreement, in which he promised to pay Barrett the Accrued Interest of $51,686.86 on or before October 1, 2001, if Municipal had not paid that amount, Barrett is entitled to ten percent interest on that amount, starting from the date Mr. Hughes promised he would pay, which was October 1, 2001. However, Barrett is not entitled to prejudgment interest against Municipal because the interest accrued under R.C. 4113.61, and hence was a statutory right to money and did not rise out of a contract or other written instrument. Since Intercargo has already paid the prejudgment interest due for payment under the Subcontract Work, Barrett is not entitled to prejudgment interest from Municipal.

### D. Municipal, Thomas J. Hughes, and Rebecca S. Hughes are Liable to Intercargo Under the Agreement of Indemnity

{¶ 36} Municipal, Thomas J. Hughes, and Rebecca S. Hughes all signed the Agreement of Indemnity, in which they promised to hold Intercargo harmless from all losses, costs, and expenses, including attorney fees sustained or incurred by Intercargo arising by reason of or in consequence of the execution of the Bond by Intercargo as surety for Municipal on the Project. Each of these defendants also agreed that their respective liabilities to Intercargo would include "all amounts paid by the Company (Intercargo) in good faith." In reliance upon the Agreement of Indemnity, Intercargo executed the Bond for Municipal in connection with the Project. As surety for the Project, Intercargo paid and sustained losses in the sum of $1,047,934.32 and expenses in the sum of $2,481.21. Thus, defendants Municipal, Thomas J. Hughes, and Rebecca S. Hughes are liable to Intercargo in the amount of $1,050,415.53 less the amount held by ODOT for payment on the Project.

### V. CONCLUSION

{¶ 37} The court has thoroughly reviewed the motion, submitted memoranda, and relevant law. After careful review, the court hereby grants Intercargo's motion for summary in that there are no genuine issues of material fact and that plaintiff is entitled to judgment as a matter of law as to the following: (1) Barrett is not entitled to recover the interest accrued under R.C. 4113.61 against Intercargo; (2) Barrett is not entitled to recover the interest accrued under R.C. 4113.61 against the funds withheld by ODOT through Barrett's Lien; (3) Intercargo is entitled to the remainder of the funds for the Project retained by ODOT in the amount of $276,828.83; and (4) Municipal and Mr. and Mrs. Hughes are jointly and severally liable to Intercargo for damages in the sum of $773,586.70, which constitutes the losses sustained to Intercargo owed under the Agreement of Indemnity plus expenses, in the amount of $1,050.415.53 less $276,828.83, the

amount of funds retained by ODOT owed to Municipal under the Project. The court also hereby partially grants Barrett's motion for summary judgment in that Barrett is entitled to recover $51,686.61, which constitutes the accrued interest under R.C. 4113.61 against Mr. Hughes, under the Guaranty. Barrett is also entitled to payment from Municipal of 18 percent interest from the 11th day of payment to Municipal until July 5, 2001, pursuant to R.C. 4113.61. Mr. Hughes and Municipal are jointly and severally liable for the amount of interest calculated at 18 percent from the 11th day of payment to Municipal until July 5, 2001. Mr. Hughes is liable for the remainder of the accrued interest up to $51,686.61 under the Guaranty. Additionally, Barrett is entitled to prejudgment interest on $51,686.61 at the rate of ten percent against Mr. Hughes as Guaranty. The court hereby denies Barrett's motion for summary judgment in that Barrett is not entitled to payment of the interest accrued pursuant to R.C. 4113.61 from Intercargo as surety for Municipal, nor from the funds withheld by ODOT on the Project.

{¶ 38} Counsel for plaintiff shall prepare the appropriate final judgment entry and submit it to the court within 21 days of the filing of this decision and entry.

{¶ 39} It is so ORDERED.

Judgment accordingly.