[Cite as *Gary Moderalli Excavating, Inc. v. Trimat Constr., Inc.*, 2013-Ohio-1701.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| GARY MODERALLI EXCAVATING, INC. | JUDGES:<br>Hon. W. Scott Gwin, P. J.<br>Hon. William B. Hoffman, J. |
| Plaintiff-Appellant | Hon. John W. Wise, J. |
| -vs- | |
| | Case Nos. 2012 AP 03 0022 and |
| TRIMAT CONSTRUCTION, INC., et al. | 2012 AP 03 0023 |
| Defendants-Appellees | O P I N I O N |

CHARACTER OF PROCEEDING:     Civil Appeal from the Court of Common Pleas, Case No. 2009 CV 05 0419

JUDGMENT:     Affirmed in Part; Reversed in Part and Remanded

DATE OF JUDGMENT ENTRY:     April 25, 2013

APPEARANCES:

For Plaintiff-Appellant     For Defendants-Appellees

SHIRLEY J. SMITH
1399 E. Western Reserve Road, Suite 2
Poland, Ohio 44514

TRACEY A. LASLO
325 East Main Street
Alliance, Ohio 44601

WILLIAM H. WOODS
JONATHAN M. BRYAN
MCNAMARA AND MCNAMARA
88 East Broad Street
Suite 1250
Columbus, Ohio 43215

*Wise, J.*

**{¶1}** Plaintiff-Appellant Gary Moderalli Excavating, Inc. appeals the post-verdict decisions of the Tuscarawas County Court of Common Pleas made following a jury trial.

**{¶2}** Defendant-Appellee in this appeal is Fidelity and Deposit Company of Maryland.

<u>STATEMENT OF THE FACTS AND CASE</u>

**{¶3}** Moderalli Excavating, Inc. and Trimat Construction, Inc. are construction contractors in the State of Ohio.

**{¶4}** Moderalli was interested in bidding a public works job known as the Newcomerstown Landfill Cap Project. The landfill cap project required the layer of topsoil to be stripped down to the base, take the trash and place it over the center of the landfill area so that it sloped away from the center, spread dirt across the base thereby creating a sub-base, then cover the sub-base with a two-foot cap of clay material, followed by six inches of topsoil and seeding.   (T. at 35-36, 417-418).

**{¶5}** Upon discussion with its insurance agent, Jerry Kernan, about the possibility of getting a bond for the project, Kernan suggested that Moderalli and Trimat work together to bid the project, with Trimat putting up the bond. (T. at 36, 412-413).

**{¶6}** On April 14, 2008, Moderalli submitted the bid under Trimat's name and the City of Newcomerstown awarded a line item bid contract of $932,814.70 to Trimat. Trimat entered into a contract with Moderalli to be the main subcontractor on the job, with a fixed price of $841,849.70. The difference between the two figures, $90,965.00, is the result of a $10,965.00 bond premium to be paid to the bonding company, Fidelity and Deposit Company of Maryland, which provided both a payment bond and a surety

bond on the project; a $50,000.00 fee to Trimat for supplying the bond for the job; and $30,000.00 payment to Trimat for doing the seeding work on the project.

{¶7} On June 23, 2008, Trimat entered into a written contract with the Village of Newcomerstown to complete the project consisting of capping the landfill. The contract provided that time was of the essence and "[t]he Work will be substantially completed within 120 days after the Village issues a Notice to Proceed. It further provided Trimat would pay liquidated damages to the Village of $400.00 for each day that expires after the time specified ... for Substantial Completion until the Work is substantially complete."

{¶8} The contract also provided that Trimat would pay Moderalli within five (5) days of having received progress payments from the city on the contract. (T. at 39-41).

{¶9} On August 4, 2008, the Village issued the Notice to Proceed stating the work "will commence to run on August 14, 2008" and "the date of Substantial Completion is December 14, 2008 ..."

{¶10} At this time, Trimat and Moderalli had not yet executed a written subcontract. Moderalli continued to work without a signed subcontract until September 26, 2008. (T. at 58-60). It was around this time that Trimat's president Matt Toler contacted Moderalli and explained to him that Moderalli had to hire Trimat to provide supervision on the job at the cost of $20,000.00. (T. at 15, 230, 430-31, 737-38, 1486). That supervision was provided by Maurice Toler. *Id.*

{¶11} At this point, the project schedule called for the Project to be "[c]omplete within next 30 days except for final top soil and seeding and mulching."

{¶12}  As progress was made on the project, Trimat made several applications, for payment for the portion of work that had been completed. Upon approval of the first application for payment, Trimat received $277,242.24 on September 18, 2008, and deposited the same the following day. (T. at 16, 72-74, 80, 103-104, 119, 126, 399, 402). Of that amount, Trimat paid $102,534.77 to Moderalli on October 8, 2008. (T. at 16, 76-77, 80, 126, 150, 211, 452). Trimat claimed that the amount withheld was for payment of the $50,000 bond, the $10,965 premium, $46,377.00 which it stated was to pay Fred Boyd, who provided dirt and clay for the Project from his nearby property. *Id.*

{¶13}  Fred Boyd testified that Trimat actually only paid him $20,000 at that time and $17,000 in February, 2009. (T. at 17, 242-43).  He claims he is still owed $5,377 due under the agreement. (T. at 247, 453-454).

{¶14} Trimat's second application for payment covered the work completed between August 25th and September 25th of 2008, requesting payment of $216,184.00. (T. at 17). At this point, the Project was 55.1% complete. Payment on this application was issued to Trimat on November 10, 2008. *Id.* Of this amount, Trimat paid Moderalli $84,839.64 in two-party checks to Moderalli and its subcontractors. (T. at 131-138).

{¶15}  The third application for payment covered the period from September 25 to October 24, 2008. (T. at 18, 146-148). Trimat received payment on this application in the amount of $236,601.60 on March 26, 2009. *Id.*  Trimat did not pay Moderalli Excavating any money from pay application number three. (T. at 18).

{¶16} The fourth application, for October 25 to November 25, 2008, was submitted when completion of the project reached 83%. (T. at 18, 160-161).  During this period, the EPA determined that certain soils and product that was being hauled in from

outside landowners did not meet their certification requirements. (T. at 18). As a result, Moderalli was directed by Trimat to do extra work burying the tainted topsoil. *Id.* This extra work, along with the delays resulting from the EPA issues and inclement weather, resulted in the filing of multiple change orders, i.e. applications for payment for the extra work beyond the contract specifications. (T. at 18-19).

**{¶17}** The first two change orders resulted in additional payments of $139,596.18.25. (T. at 169-170).

**{¶18}** Payment applications five and six resulted in payments to Trimat of $26,031.96 received on July 9, 2009 and $113,041.02, respectively, with no payment remitted to Moderalli. (T. at 19, 162, 166-170).

**{¶19}** On December 9, 2008, Moderalli gave Fidelity notice that they were not receiving payments from Trimat as agreed and were thus seeking claim on the bond. (T. at 475-76).

**{¶20}** Moderalli also filed an attested account in order to freeze payment from the Village of Newcomerstown to Trimat due to non-payment. (T. at 390-395).

**{¶21}** Fidelity issued a surety bond to Trimat for release of the funds. At the end of the year, W.E. Quicksall, the engineer on the job, certified that the cap had been completed. (T. at 21, 197-198, 272).

**{¶22}** Altogether, Trimat was paid $1,130,627.42 on the Project. Moderalli received $187,000.31. (T. at 19).

**{¶23}** After the job had been certified complete by W.E. Quicksall, Trimat contacted them to suggest that the job was not actually complete, claiming that Moderalli was roughly one acre short on the landfill cap. (T. at 20).

**{¶24}** According to Moderalli, they were prevented by Trimat from working at the job site during the months of January, February and March, 2009. (T. at 20-21, 487-493). Moderalli claims that while it disputed Trimat's claim that the job hadn't been finished, Moderalli Excavating offered to fix whatever issues remained and asked permission to begin work. *Id.*

**{¶25}** Moderalli testified that throughout the month of April, 2009, he sent numerous messages to Trimat indicating that he had equipment and workers on site ready to complete whatever remaining work Trimat felt was required. (T. at 20-21, 487-493).

**{¶26}** On May 1, 2009, Trimat terminated Moderalli Excavating.

**{¶27}** As a result of such termination, Moderalli initiated the instant litigation to preserve and enforce its lien rights against Fidelity and Trimat.

**{¶28}** Plaintiff Moderalli Excavating, Inc. filed a Complaint against Defendants Trimat Construction, Inc. and Fidelity and Deposit Company of Maryland on claims of (1) Breach of Contract- Nonpayment of Invoices; (2) Breach of Contract- Extra Work and Delays; (3) Breach of Contract- Improper Termination of Contract; (4) Claim Against Lien Bond; (5) Claim Against Payment Bond; and (6) Prompt Payment Act. The case deals with a subcontract between Trimat, the general contractor, and Moderalli, the subcontractor, for the construction of a landfill cap for the Village of Newcomerstown, Ohio.

**{¶29}** Trimat filed an Answer and Counterclaim against Moderalli Excavating, alleging causes of action for (1) Breach of Contract; (2) Indemnification; and (3) Unjust Enrichment.

{¶30} Fidelity filed an Answer but failed to appear or defend at trial.

{¶31} At the conclusion of the trial, the jury returned unanimous verdicts in favor of Plaintiff Moderalli and against Defendants Trimat and Fidelity on all claims.

{¶32} A number of post-trial motions were filed by all parties following the trial. The trial court overturned the unanimous jury verdict in favor of Plaintiff Moderalli on its Wrongful Termination claim and reduced the jury's unanimous damages award of $903,308.75 in favor of Moderalli on its Breach of Contract claim to $751,010.89. Further, the trial court denied Plaintiff's Motion for Verification of Joint and Several Liability, Motion for Award on Plaintiff's Verdict on Prompt Payment and Motion for Attorneys Fees.

{¶33} Appellant Moderalli now appeals these decisions, raising the following Assignments of Error:

ASSIGNMENTS OF ERROR

{¶34} "I. THE TRIAL COURT ERRONEOUSLY DENIED PLAINTIFF'S CLAIM FOR 18% INTEREST AND ATTORNEY FEES AND COSTS UNDER OHIO'S PROMPT PAYMENT ACT, O.R.C. 4113.61. THIS DECISION WAS CONTRARY TO THE JURY VERDICT FOR PLAINTIFF, THE MANDATORY LANGUAGE OF THE STATUTE, AND WAS FURTHER AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶35} "II. THE TRIAL COURT WRONGFULLY REFUSED TO CERTIFY ALL JUDGMENTS AS JOINT AND SEVERAL AS BETWEEN TRIMAT CONSTRUCTION, INC. AND ITS SURETY, FIDELITY AND DEPOSIT COMPANY OF MARYLAND. SAID ERROR IS CONTRARY TO LAW AND FURTHER AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶36}** "III. THE TRIAL COURT ERRED IN GRANTING DEFENDANTS' MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT AS SAID MOTION WAS FILED OUTSIDE OF THE STATUTORY WINDOW FOR SUCH MOTIONS EXPLICITLY IMPOSED BY OHIO CIVIL RULE 50(B).

**{¶37}** "IV. THE TRIAL COURT'S DECISION TO SET ASIDE THE UNANIMOUS JURY VERDICT IN FAVOR OF PLAINTIFF MODERALLI EXCAVATING, INC. ON ITS IMPROPER TERMINATION CLAIM WAS NOT ONLY CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE, IT WAS AN IMPERMISSIBLE USURPING OF THE JURY'S DECISION ON THE FACTUAL ISSUE OF TRIMAT'S BAD FAITH.

**{¶38}** "V. THE REDUCTION OF THE JURY'S UNANIMOUS AWARD OF $903,308.75 IN DAMAGES TO PLAINTIFF MODERALLI EXCAVATING, INC. ON ITS BREACH OF CONTRACT CLAIM WAS NOT ONLY PREDICATED ON THE TRIAL COURT'S ERRONEOUS REVERSAL OF THE JURY'S DECISION ON THE WRONGFUL TERMINATION CLAIM, BUT WAS FURTHER MATHEMATICALLY UNSOUND, AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND CONTRARY TO OHIO LAW."

I.

**{¶39}** In its First Assignment of Error, Appellant claims that the trial court decision in denying its claim for 18% interest along with attorney fees and costs under R.C. §4113.61 was against the manifest weight of the evidence. We disagree.

**{¶40}** Revised Code §4113.61, also known as the Prompt Payment Act, provides in part:

**{¶41}** "(A)(1) If a subcontractor or materialman submits an application or request for payment or an invoice for materials to a contractor in sufficient time to allow the contractor to include the application, request, or invoice in his own pay request submitted to an owner, the contractor, within ten calendar days after receipt of payment from the owner for improvement to property, shall pay to the: (a) Subcontractor, an amount that is equal to the percentage of completion of the subcontractor's contract allowed by the owner for the amount of labor or work performed.

**{¶42}** "*** If the contractor fails to comply with division (A)(1) of this section, the contractor shall pay the subcontractor or materialman, in addition to the payment due, interest in the amount of eighteen per cent per annum of the payment due, beginning on the eleventh day following the receipt of payment from the owner and ending on the date of full payment of the payment due plus interest to the subcontractor or materialman.

**{¶43}** "*** If a contractor receives any final retainage from the owner for improvements to property, the contractor shall pay from that retainage each subcontractor and materialman his proportion of the retainage, within ten calendar days after receipt of the retainage from the owner, or within the time period provided in a contract, invoice, or purchase order between the contractor and the subcontractor or materialman, whichever time period is shorter, provided that the contractor has determined that the subcontractor's or materialman's work, labor, and materials have been satisfactorily performed or furnished and that the owner has approved the subcontractor's or materialman's work, labor, and materials.

**{¶44}** "If the contractor fails to pay a subcontractor or materialman within the appropriate time period, the contractor shall pay the subcontractor or materialman, in addition to the retainage due, interest in the amount of eighteen per cent per annum of the retainage due, beginning on the eleventh day following the receipt of the retainage from the owner and ending on the date of full payment of the retainage due plus interest to the subcontractor or materialman."

**{¶45}** As set forth above, R.C. §4113.61, requires a contractor to timely pay its subcontractor undisputed amounts under the parties' contract and sets forth penalties for noncompliance. *Masiongale Elec.-Mechanical, Inc. v. Constr. One, Inc.,* 102 Ohio St.3d 1, 2004-Ohio-1748. Under the Act, a subcontractor "includes any person who undertakes to construct, alter, erect, improve, repair, demolish, remove, dig, or drill any part of any improvement under a contract with any person other than the owner, part owner, or lessee." R.C. §4113.61(F)(1); R.C. §1311.01(D).

**{¶46}** Therefore, pursuant to R.C. §4113.61(A)(1), if a subcontractor makes a timely request for payment, a contractor must pay the subcontractor in proportion to the work completed within ten calendar days of receiving payment from the owner. A contractor, however, is permitted to withhold "amounts that may be necessary to resolve disputed liens or claims involving the work or labor performed or material furnished by the subcontractor."

**{¶47}** The purpose for the act is to provide an incentive for general contractors to promptly pay subcontractors. *Intercargo Ins. Co. v. Mun. Pipe Contractors, Inc.* 127 Ohio Misc.2d 48, 2003-Ohio-7363.

**{¶48}** Failure to comply with these provisions obligates a contractor to pay interest on the overdue payment at a rate of 18 percent per annum. R.C. §4113.61(A)(1) and (B)(1). A subcontractor also may file a civil action to recover the amount due and the statutory interest. R.C. §4113.61(B)(1). If the court determines that the contractor has not complied with the prompt-payment statute, the court must award the subcontractor the statutorily prescribed interest. *Id.* In addition, the prevailing party is entitled to recover reasonable attorney fees, unless such an award would be inequitable, together with court costs. R.C. §4113.61(B)(1) and (B)(3).

**{¶49}** Courts have interpreted that language to mean that prejudgment interest is not warranted under R.C. §4113.61 where the contractor, in good faith, withholds amounts when there is a disputed claim. *See Consortium Communications v. Cleveland Telecommunications, Inc.,* 10th Dist. No. 97APG08-1090. Thus, if the contractor does not assert a good faith basis to withhold the money, then the subcontractor is entitled to prejudgment interest. Moreover, where a "contractor has not complied with the prompt-payment statute, the court must award the subcontractor the statutorily prescribed interest. * * * In addition, the prevailing party is entitled to recover reasonable attorney fees, unless such an award would be inequitable, together with court costs." *Masiongale,* 102 Ohio St.3d at 4. Furthermore, R.C. §4113.61(B)(3) states that "[t]he court shall not award attorney fees under * * * this section if the court determines, following a hearing on the payment of attorney fees, that the payment of attorney fees to the prevailing party would be inequitable."

**{¶50}** A "prevailing party" is one in whose favor the decision or verdict is rendered and judgment entered. *See Collins v. York,* 1st Dist. No. C-000125, quoting

*Hagemeyer v. Sadowski* (1993), 86 Ohio App.3d 563, 566; *Keal v. Day,* 164 Ohio App.3d 21, 2005-Ohio-5551, at ¶8 (for purposes of a contract providing for reasonable attorney fees for the prevailing party in any dispute over the contract, the term "prevailing party" means "one in whose favor the decision or verdict is rendered and judgment entered").

{¶51} This Court may not reverse a judgment as against the manifest weight of the evidence if there is some competent, credible evidence to support the verdict. *C.E. Morris Co. v. Foley Construction Co.* (1978), 54 Ohio St.2d 279, 376 N.E.2d 578, syllabus.

{¶52} In the instant case, Appellant did not request that written interrogatories be submitted to the jury, an option available pursuant to Civ.R. 49(B). The purpose of interrogatories is to test the reasoning used by the jury in reaching its decision, so that the reasoning does not conflict with the verdict.

{¶53} Here, based on the evidence presented, the jury could have found in favor of Appellant on the Prompt Payment Act claim but not award Appellant any amount of damages if it also found that Trimat asserted a good faith basis for withholding the money. Without interrogatories, there is nothing before this Court to indicate *why* the jury found as it did. Pursuant to the two-issue rule, a general verdict, untested by interrogatories, may stand when one or more alternative grounds are properly submitted to the jury. *McCarthy v. Kasperak* (1981), 3 Ohio App.3d 206, 208, 3 OBR 234, 236-237, 444 N.E.2d 472, 475, citing *Sites v. Haverstick* (1873), 23 Ohio St. 626.

{¶54} Further, Appellant did not object to the verdict form when it was submitted to the jury or when the jury's verdict was read. A party may not sit in silence while the

jury is discharged and then attack the verdict as defective. *See Greynolds v. Kurman* (1993), 91 Ohio App.3d 389, 395. We find appellant waived its objection to the jury's alleged omission by failing to object before the jury was discharged*. Schweisberger v. Weiner*, Stark App. No. (Dec. 12, 1995) 1994 CA 00291, 1995 CA 00367.

**{¶55}** Without interrogatories being submitted to the jury, neither this Court nor the trial court could know upon what factors the jury based its decision. There is no evidence to support Appellant's theory that the jury failed to consider all elements of damages.

**{¶56}** Appellant's First Assignment of Error is overruled.

II.

**{¶57}** In its Second Assignment of Error, Appellant argues that the trial court erred in failing to grant its post-trial motion to certify all judgments as joint and several as between Trimat Construction and Fidelity and Deposit Company of Maryland.  We disagree.

**{¶58}** After the jury reached its verdicts in this case, Appellant filed a post-judgment motion requesting that the trial court certify that Fidelity and Deposit Company of Maryland is liable to the extent of the award against Trimat Construction, Inc.

**{¶59}** Upon review, this Court does not find anywhere in the record where the issue of joint and several liability was presented to the jury for determination.

**{¶60}** Appellant cites no case law to support a post-trial determination as to joint and several liability between the parties when the verdicts themselves are silent as to same.

**{¶61}** Without making a determination as to the status of the principal-agent relationship and any attendant liability as between Trimat and Fidelity and Deposit Company of Maryland, this Court finds that the trial court did not err in failing to certify the judgments as joint, and several as such were not raised as an issue at trial.

**{¶62}** Appellant's Second Assignment of Error is overruled.

III.

**{¶63}** In its Third Assignment of Error, Appellant claims that Appellee's Motion for Judgment Notwithstanding the Verdict was not timely filed and therefore the trial court lacked jurisdiction to grant same. We agree.

**{¶64}** Civ.R. 50(B) Motion for judgment notwithstanding the verdict, provides:

**{¶65}** "Whether or not a motion to direct a verdict has been made or overruled and not later than fourteen days after entry of judgment, a party may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion; or if a verdict was not returned such party, within fourteen days after the jury has been discharged, may move for judgment in accordance with his motion. A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative. If a verdict was returned, the court may allow the judgment to stand or may reopen the judgment. If the judgment is reopened, the court shall either order a new trial or direct the entry of judgment, but no judgment shall be rendered by the court on the ground that the verdict is against the weight of the evidence. If no verdict was returned, the court may direct the entry of judgment or may order a new trial.

**{¶66}** The standard for granting a motion for JNOV under Civ.R. 50(B) is the same used for granting a Civ.R. 50(A) directed verdict. *Texler v. D.O. Summers Cleaners & Shirt Laundry Co.* (1998), 81 Ohio St.3d 677, 679, 693 N.E.2d 271; *Wagner v. Roche Laboratories* (1996), 77 Ohio St.3d 116, 121, 671 N.E.2d 252, 256, at fn. 2. In other words, as long as substantial competent evidence supports the non-moving party, and reasonable minds could reach different conclusions about that evidence, the motion must be denied. *See Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 284-285, 423 N.E.2d 467; *Posin v. A.B.C. Motor Court Hotel, Inc.* (1976), 45 Ohio St.2d 271, 275, 344 N.E.2d 334.

**{¶67}** In reviewing a motion for JNOV, courts do not consider the weight of the evidence or the witness credibility; rather, courts consider the much narrower legal question of whether sufficient evidence exists to support the verdict. *See* Fink, Greenbaum & Wilson, Guide to the Ohio Rules of Civil Procedure (2001 Ed.) 50-8, § 50-5. Because this is a question of law, appellate courts conduct a de novo review. *Randolph v. Fetty,* Lawrence App. No. 02CA9, 2003-Ohio-598, at ¶ 6; *Krannitz v. Harris* (Jan. 19, 2001), Pike App. No. 00CA649; *Neal v. Blair* (Jun. 10, 1999), Lawrence App. No. 98CA37.

**{¶68}** In the case sub judice, Appellant argues that Appellee failed to file its JNOV motion within the requisite fourteen (14) days as provided by the rule.

**{¶69}** Upon review, we find that Appellee's JNOV motion was filed on November 9, 2012. It is therefore clear that Appellee did not file its motion within fourteen days of the trial court's original October 24, 2012, Judgment Entry.  However, it was filed within fourteen days of the Nunc Pro Tunc Judgment Entry filed on October 28, 2012.  The

Nunc Pro Tunc Entry in this case was filed to include the "there is no just reason for delay" language pursuant to Civ.R. 54.

**{¶70}** We must therefore determine whether the Nunc Pro Tunc entry in this matter extended the time for filing of the JNOV motion.

**{¶71}** Appellee cites a number of cases that address when a nunc pro tunc order extends the time for the deadline for the filing of an appeal. However, we are dealing with the time for the filing of a JNOV motion, not an appeal. Civ.R. 6(B) specifically states:

**{¶72}** "When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if request therefore is made before the expiration of the period originally prescribed or as extended by a previous order, or (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect; *but it may not extend the time for taking any action under Civ.R. 50(B), Civ.R. 59(B), Civ.R. 59(D), and Civ.R. 60(B)*, except to the extent and under the conditions stated in them." (emphasis added).

**{¶73}** Further, even under an "appeal" analysis, under Ohio law, a "nunc pro tunc order is entered as of the date of the original judgment, however if there is a modification which affects the parties' rights, appeal may be perfected from the actual date of the nunc pro tunc order." *Perfection Stove Co. v. Scherer* (1929), 120 Ohio St. 445. We do not find that simply adding the Civ.R. 54 language, the rights of any party was modified.

{¶74} We therefore find Appellee's Motion for Judgment Notwithstanding the Verdict was not timely filed and Appellant's Motion to Strike pursuant to Civ.R. 12(F) should have been granted.

{¶75} Appellant's Third Assignment of Error is sustained.

IV.

{¶76} In its Fourth Assignment of Error, Appellant argues that the trial court erred in granting Appellee's JNOV motion as to Appellant's claim for improper termination.

{¶77} Based on our disposition of Assignment of Error III finding that Appellee's JNOV motion was not timely filed, we find this Assignment of Error to be well-taken and sustain same.

V.

{¶78} In its Fifth and final Assignment of Error, Appellant argues that the trial court erred in reducing the jury's unanimous damage award. We agree.

{¶79} Here, the jury returned a damage award of $903,308.75 on Appellant's breach of contract claim. The trial court, in its Decision on Post-Verdict Motions, stated:

{¶80} "… reasonable minds could not conclude that the Plaintiff is entitled to damages in the amount of $903,308.75 for its Breach of Contract Claim. Upon review of the Court file, the Court concludes that an award of $903,308.75 represents full compensation under the contract as if the contract had been fully performed. The Court concludes Moderalli Excavating did not fully perform under the contract, which makes a damages award of $903,308.75, inappropriate."

**{¶81}** The trial court then went on to determine that the evidence showed that the landfill project was only 83.14% complete when Moderalli was terminated by Trimat and, therefore, the award should be reduced to 83.14% of $903,308.75, or $751,010.89.

**{¶82}** The assessment of damages is usually entirely within the discretion of the jury, and the court is disallowed to alter a jury's decision. *Menda ex rel. Justin v. Springfield Radiologists, Inc.,* Clark App. No.2001–CA–91, 2002–Ohio–6785. However, "a remittitur is proper if the jury's award is so excessive as to appear to be the result of passion or prejudice, or if the amount awarded is against the manifest weight of the evidence." *Id.*

**{¶83}** In *Dardinger v. Anthem Blue Cross & Blue Shield,* 98 Ohio St.3d 77, 2002-Ohio-7113, 781 N.E.2d 121, the Supreme Court stated:

**{¶84}** "The court in *Chester Park Co. v. Schulte* (1929), 120 Ohio St. 273, 166 N.E. 186, paragraph three of the syllabus, set forth the four criteria necessary for a court to order a remittitur: (1) unliquidated damages are assessed by a jury, (2) the verdict is not influenced by passion or prejudice, (3) the award is excessive, and (4) the plaintiff agrees to the reduction in damages."

**{¶85}** In this case, the trial court did not engage in a remittitur analysis prior to reducing the jury's damage award and more importantly, the plaintiff did not agree to a reduction in damages.

**{¶86}** Further, we have previously found that the trial court did not have the authority to consider Appellee's Motion for Judgment Notwithstanding the Verdict, or in the Alternative, for a New Trial, as same was not timely filed.

**{¶87}** Appellant's Fifth Assignment of Error is sustained.

Cross-Appeal

**{¶88}** Appellee Fidelity and Deposit Company of Maryland also set forth the following "Cross Assignments of Error" in their brief:

**{¶89}** "I. THE TRIAL JUDGE ERRED AS A MATTER OF LAW BY FAILING TO REDUCE THE JUDGMENT AGAINST TRIMAT CONSTRUCTION, INC. ("TRIMAT") ON GARY MODERALLI EXCAVATING, INC.'S ("MODERALLI") BREACH OF SUBCONTRACT CLAIM BY THE EXTRA EXPENSES INCURRED BY TRIMAT IN EXTENDING THE CAP TO COVER ALL OF THE WASTE AS REQUIRED BY TRIMAT'S CONTRACT WITH THE VILLAGE OF NEWCOMERSTOWN AND IN COMPLETING THE PROJECT AS ALLEGED IN TRIMAT'S COUNTERCLAIMS.

**{¶90}** "II. AFTER THE TRIAL JUDGE CORRECTLY HELD THAT TRIMAT HAD PROPERLY TERMINATED MODERALLI' S SUBCONTRACT AS PROVIDED BY THE TEXT OF ARTICLE VIII, ¶8.I, THE TRIAL COURT ERRED IN FAILING TO ORDER A NEW TRIAL ON THE AMOUNT OF DAMAGES, IF ANY, TRIMAT AND MODERALLI ARE ENTITLED TO RECOVER FROM EACH OTHER UNDER ¶8.1, THE TERMINATION CLAUSE OF MODERALLI'S SUBCONTRACT."

**{¶91}** The subject and application of cross-assignments of error and cross-appeals are addressed in App.R. 3(C) and the attendant staff note. Cross-assignments of error are asserted for the purpose of *preserving the relief granted in the trial court's judgment* generally for reasons not advanced by the trial court, to further guard against reversal, and/or to obtain rulings on interlocutory orders, in the event the case is not affirmed. Cross-appeals are asserted for the purpose of *obtaining different relief than*

*that granted by the trial court.* App.R. 3(C). *Rzeszotarski v. Sanborn* (June 7, 1996), 11th Dist. No. 95–G–1906

**{¶92}** Here, Appellee's cross-assignments are in the nature of assignments in a cross-appeal rather than cross-assignments because they essentially assert errors at trial. Since no separate notice of appeal was filed with respect to such assignments, we find such assignments are not properly before us.[1]

**{¶93}** Under App.R. 12(A)(2), when assignments of error are not submitted in proper form, the appellate court is under no obligation to review them. Further, because we have not ordered a new trial in this matter, these issues are moot because any determination that this Court would make would have no legal effect on the actual controversy.

By: Wise, J.

Gwin, P. J., concurs.

Hoffman, J., concurs in part and dissents in part.

_____

_____

_____

JUDGES

JWW/d 0326

---

[1] Appellee Trimat Construction filed a Notice of Appeal in this matter on March 23, 2012, Case No. 12 AP 03 0023, which was consolidated with the instant appeal. Trimat, however, never filed a brief or appeared in this matter.

*Hoffman, J., concurring in part and dissenting in part*

{¶94} I concur I the majority's analysis and disposition of Appellant's third, fourth and fifth assignments of error. I further concur in its analysis and disposition of Appellees/Cross-Appellants' "Cross-Assignments of Error."

{¶95} I find the issue relative to Fidelity's potential joint liability raised in Moderalli's second assignment of error troubling. Trimat did not file a reply brief to Moderalli's appellant's brief. Despite the fact only Moderalli's second assignment of error affected Fidelity, Fidelity, nevertheless, responded on Trimat's behalf to Moderalli's other assignments of error. And Fidelity attempted to assert two "Cross-Assignments of Error" on behalf of Trimat. If Fidelity owes no obligation as surety on the judgment against Trimat, why has it defended, and indeed pursued additional affirmative relief from the judgment on Trimat's part? Wouldn't it be in Trimat's best interest that Fidelity, as surety, be determined to be jointly and severally liable to satisfy any judgment against it, whether it be jury's original verdict; the trial court's judgment reducing the verdict; or the judgment increased under the prompt pay act claim? I question if there exists a potential or actual conflict of interest between Fidelity and Trimat at this juncture.

{¶96} The majority indicates, upon review, it does not find anywhere in the record where the issue of joint and several liability was presented to the jury for determination. I agree.

{¶97} However, the record does reflect the jury was instructed as follows:

{¶98} In this case Fidelity agreed to serve as the surety for Trimat. Based on this surety principal relationship Fidelity agreed to pay certain debt, default and

monetary damages related to the project in the event Trimat was unable to pay.  Under Ohio law a surety may only be liable to the extent that its agent or principal is liable.

{¶99} Consequently, if you find that Trimat did not wrongfully terminate the subcontract or breach the subcontract or breach the subcontract then you must find that Fidelity is not liable for monetary damages to Moderalli under either bond. (Trp. at 1431, lines 1-11).

{¶100}  That instruction is consistent with the position Fidelity took both during and post trial.

{¶101}  Fidelity agreed to act as surety for Trimat on both the payment bond and the surety bond.  "A surety is primarily and jointly liable with the principal debtor.  His obligation is created concurrently with that of the principal debtor."  *St. Paul Fire & Marine Ins. Co. v. Indus. Comm.* 30 Ohio St.3d 17, 20 (1987).

{¶102} During the examination of Newcomerstown Mayor Guy, Moderalli read from the bond document which states, in pertinent part, the principal [Trimat] "…shall pay all lawful claims of subcontractors, material suppliers and laborers for labor performed and materials furnished… We [Fidelity] agreeing and assenting that this undertaking shall be for the benefit of any material suppliers or laborer having just claim as well as the obligee herein." (Trp. at 386-390).

{¶103} At that point, Fidelity stipulated they provided a [surety] bond (Trp. at 393-395) and the trial court assured Moderalli the bond, the attested account, surety "…all are going to be exhibits in this case." (Trp. 393-395).

{¶104} In response to Moderalli's motion for directed verdict against Fidelity and Trimat, Fidelity's counsel, Mr. Withee, stated:

**{¶105}** "Just very simply, Your Honor, it goes to the heart of the case. Surety is not liable unless Trimat has been found to have breached its obligations. There's been no finding. There is clearly evidence on both sides of that issue. Thus, as a fundamental matter there can be no liability on the surety bond at this point."

**{¶106}** Trp. at (1390-91).

**{¶107}** Shortly thereafter, Mr. Withee reiterated:

**{¶108}** "Your Honor, to begin with it's the same argument as the last one. The bond is there as security should Trimat be found to be responsible. It's not a strict liability situation where a bond is given and automatically must be paid. There must be a reason to be paying on that bond. That has not been established, or at the very least there is highly contentious evidences to whether or not that money - - whether or not Trimat actually did breach."

**{¶109}** (Trp. at 1392-93).

**{¶110}** And finally, in its post-trial Motion for Judgment Notwithstanding the Verdict filed November 9, 2011, Fidelity states with regard to the verdicts in favor of Moderalli on the payment and surety bonds, "… Fidelity, as Surety, is only liable to the extent Trimat is found liable."

**{¶111}** Both the surety bond, Exhibit SSS, and the payment bond, Exhibit PPP, expressly state Fidelity binds itself with Trimat jointly and severally. The jury having found in favor of Moderalli and against Trimat, I believe Fidelity's joint and several liability is established pursuant to the terms of the bonds and its counsel representations

as a matter of law.[2]  Accordingly, I respectfully dissent from the majority's decision to overrule Moderalli's second assignment of error.

{¶112} I also respectfully dissent, in part, from the majority's decision to overrule Moderalli's first assignment of error regarding the trial court's failure to award damages under Ohio's Prompt Payment Act.

{¶113} The majority cites the *Masiongale Elec. & Intercargo Inc. Co.*, case which interpreted R.C. 4113.61(B)(1) and (3) as requiring the court to award the subcontractor the statutorily prescribed interest, if the court determines the contractor has not complied with the Prompt Payment Act.  However, the majority further notes courts have interpreted the statute to mean the statutory interest award is not warranted where the contractor (Trimat), in good faith, withhold amounts when there is a disputed claim.

{¶114} The trial court concluded, in its Decision filed February 23, 2012, "… Trimat withheld the payments due Moderalli Excavating in good faith based upon a disputed claim." (Decision, at p.7, #6).  My problem with the trial court's conclusion is that this issue had already been submitted to and decided by the jury.

{¶115} The trial court instructed the jury:

---

[2] The jury verdicts in favor of Moderalli on its breach of contract, wrongful termination and prompt payment act claims name only Trimat as defendant.  I have been unable to find in the record the unexecuted verdict forms to be completed had the jury found against Moderalli on those claims.  I can only surmise there were not separate verdict forms finding either for or against Moderalli on the claims as they pertained specifically to Fidelity.  I do so, in part, because their absence would be consistent with the trial court's instruction noted, supra, concerning Fidelity's status as surety for Trimat. I do so, also in part, based upon the trial court's reading of the second possible verdict form relative to the breach of contract (read as an example of the verdict forms on the various counts) which only lists a verdict in favor of Trimat, not Fidelity. In a similar vein, the verdict in favor of Moderalli against Fidelity on the surety bond showing an award of $0 in monetary damages is not necessarily inconsistent with the jury instruction Fidelity is liable as a matter of Ohio law to the extent the agent or principal (Trimat) is liable.

{¶116} Ladies and gentlemen, Moderalli claims that Trimat violated the Ohio law known as the Prompt Payment Act, and that's again at Revised Code 4113.61, by failing to timely release and pay to Moderalli moneys Trimat received from the village by the preponderance of the evidence; that Moderalli properly submitted and application for request for payment to Trimat and Trimat filed to timely release the requested moneys to Moderalli within 10 calendar days after receipt of application or request for payment; and Trimat failed to have any proper justification for refusing to release the moneys to Moderalli.

{¶117} Under the Ohio Prompt Payment Act contractors are permitted to withhold moneys necessary to resolve disputed claims involving work or labor provided by a subcontractor.

{¶118} Trimat is entitled to withhold moneys from Moderalli under the Ohio Prompt Payment Act if Trimat can assert a good faith basis to withhold the moneys related to disputed claims regarding work or labor performed by Moderalli. Such good faith basis need not be truth but made only in good faith related to the disputed work or labor provided by Moderalli.

{¶119} Trp. 1431-1432, lines 12-8.

{¶120} This instruction clearly placed before the jury the issue of Trimat's good faith in withholding prompt payment. The jury clearly and unanimously responded by finding for Moderalli and against Trimat on its Prompt Payment Act claim.[3] Having submitted this claim to the jury with the consent of the parties, I find the trial court usurped the jury's authority by later finding Trimat acted in good faith. Given the jury's

---

[3] The verdict form further reflects the jury awarded $0 in damages.

verdict, I find the trial court erred in failing to award the statutorily mandated interest award.  However, I do not find the trial court's decision to deny attorney fees for the successful prosecution of this claim was an abuse of its discretion.  Accordingly, I concur in part and dissent in part from the majority's decision to overrule Modarelli's first assignment of error.


 

_____

HON. WILLIAM B. HOFFMAN

IN THE COURT OF APPEALS FOR TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT


GARY MODERALLI EXCAVATING, INC.     :
                                    :
        Plaintiff-Appellant         :
                                    :
-vs-                                :          JUDGMENT ENTRY
                                    :
TRIMAT CONSTRUCTION, INC., et al.   :
                                    :
        Defendants-Appellees        :          Case Nos,  2012 AP 03 0022 and
                                    :                      2012 AP 03 0023


For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Tuscarawas County, Ohio, is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

Costs to be split equally among the parties.


_____


_____


_____

                                    JUDGES