WORLDWIDE ASSET PURCHASING, L.L.C., Appellee,

v.

EASTERLING, Appellant.

[Cite as *Worldwide Asset Purchasing, L.L.C. v. Easterling,*
186 Ohio App.3d 478, 2009-Ohio-6196.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

Nos. 09AP–347, 09AP–566.

Decided Nov. 24, 2009.

Immerman & Tobin Co., L.P.A., and Amy N. Diers, for appellee.

Legal Aid Society of Columbus and Leslie Varnado Jr., for appellant.

TYACK, Judge.

{¶ 1} Worldwide Asset Purchasing, L.L.C., is a company that buys third-party debt from others. In this case, Worldwide purchased an account on a credit card from Direct Merchants Credit Card Bank. The credit card may have been opened by Terri Easterling's ex-husband in or around February 2002. After the obligor defaulted on the payment on the credit card, issues related to the debt were submitted for arbitration, pursuant to a purported binding-arbitration clause in the credit-card agreement. The National Arbitration Forum ultimately issued a decision ordering Easterling to pay $9,373.62 on the account. For reasons not in the record before us, Easterling was not present at the arbitration hearing. Similarly, Easterling did not file a motion to quash the arbitrator's award. Approximately one year later, Worldwide filed a motion with the court of common pleas to confirm the arbitration award and to enter judgment against Easterling

in accordance with R.C. 2711.09. Easterling filed a motion to dismiss on January 27, 2009, which the trial court denied. The court instead granted Worldwide's application to confirm the arbitration award.

{¶ 2} At issue on appeal is whether Worldwide's motion to confirm the arbitration award sufficiently complied with R.C. 2711.14, which requires that the party seeking to enforce an award submit certain documents with its motion evidencing the existence of an arbitration agreement and an arbitration award. In this case, Worldwide submitted a generic copy of a credit-card agreement, which included an arbitration clause, but which was not signed by Easterling, and about which Easterling claimed no knowledge or recollection. In some circumstances, courts have held that arbitration agreements do not have to be signed to be enforceable. However, the facts in this case cast serious doubt on whether Easterling was a party to the credit-card agreement and therefore whether she agreed to arbitration of issues regarding the account. We therefore reverse the decision of the trial court.

{¶ 3} Appellant, Easterling, presents four assignments of error for review:

First Assignment of Error

The trial court erred when it ruled that the defendant-appellant had to file a timely motion to vacate or a motion to modify the arbitration award under Ohio Revised Code 2711.09 before challenging the confirmation of the arbitration award under Ohio Revised Code 2711.14.

Second Assignment of Error

The trial court erred when it ruled that the plaintiff had complied with the requirements of Ohio Revised Code 2711.14.

Third Assignment of Error

The trial court erred when it considered the plaintiff's memorandum contra or opposition memorandum, which had not been served on counsel for the defendant-appellant as required under Ohio Civil Rule 5.

Fourth Assignment of Error

The trial court erred when it issued a ruling overruling the Motion to Dismiss of the defendant-appellant without conducting a hearing as required by Ohio Revised Code 2711.09.

{¶ 4} These assignments of error all present legal questions, which we review de novo, without deference to the trial court's conclusions or analysis. See, e.g., *Olive Branch Holdings, L.L.C. v. Smith Technology Dev., L.L.C.*, 181 Ohio App.3d 479, 2009-Ohio-1105, 909 N.E.2d 671, ¶ 23, citing *Graham v. Drydock Coal Co.* (1996), 76 Ohio St.3d 311, 313, 667 N.E.2d 949. Moreover, the primary issue is presented by the second assigned error and requires us to interpret R.C. 2711.14. The interpretation of a statute is a purely legal question. Thus, we

conduct a de novo review of a trial court's judgment without affording any deference to the trial court's interpretation of the statute. *Washington Cty. Home v. Ohio Dept. of Health*, 178 Ohio App.3d 78, 2008-Ohio-4342, 896 N.E.2d 1011, ¶ 27.

{¶ 5} As with the Federal Arbitration Act, enacted in 1925, Ohio's substantive law governing arbitration proceedings was enacted in 1953—before the use of consumer credit cards became as commonplace as now. See Section 1 et seq., Title 9, U.S.Code; 9 U.S.C. 1 et seq.; cf. R.C. 2711.01 et seq. In this country, arbitration was used primarily in commercial-trade disputes, and later in labor and trade-union disputes. More recently, however, arbitration clauses have made their way into ordinary consumer contracts and transactions, oftentimes vis-à-vis fine print contained in consumer loans, insurance policies, and garden-variety purchase agreements. See, e.g., *West v. Household Life Ins. Co.*, 170 Ohio App.3d 463, 467–468, 2007-Ohio-845, 867 N.E.2d 868.

{¶ 6} In a contractual setting, when the parties agree to an arbitration clause, courts typically view that clause as a joint expression that the parties agreed to settle any disputes that should arise under the contract (and are within the scope of the clause) by arbitration, rather than by conventional litigation. *Williams v. Aetna Fin. Co.* (1998), 83 Ohio St.3d 464, 471, 700 N.E.2d 859. The legislature also encourages arbitration as an alternative means of resolving disputes. See, e.g., R.C. 2711.01(A). Thus, when the parties to a contract include a provision for the resolution of a particular dispute or controversy arising out of the contract ("or out of the refusal to perform the whole or any part of the contract"), that provision "shall be valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract." Id., quoting R.C. 2711.01(A). And with limited exceptions, courts will uphold an arbitration clause just as any other contractual provision. See id; see also *Council of Smaller Ents. v. Gates, McDonald & Co.* (1998), 80 Ohio St.3d 661, 668, 687 N.E.2d 1352.

{¶ 7} The presumption favoring arbitration, however, does not trump all other principles of law or equity. For example, situations where the parties' agreement appears to be an adhesion[1] contract will substantially weaken the presumption favoring arbitration. Id. at 667, 687 N.E.2d 1352; see also *Williams* at 473, 700 N.E.2d 859; *First Options of Chicago, Inc. v. Kaplan* (1995), 514 U.S.

---

1. An adhesion contract is a type of contract in which one party has most if not all of the bargaining power and uses its superior bargaining position to impose its terms on the weaker party. See, e.g., *Winters v. Hart*, 162 Ohio App.3d 15, 2005-Ohio-3367, 832 N.E.2d 753, ¶ 11, citing Black's Law Dictionary (8th Ed.1999) 342 ("For the most part, insurance policies are 'adhesion contracts,' which are standardized agreements offered to consumers on an essentially 'take it or leave it' basis, wherein the buyer has no realistic choice as to its terms").

938, 945, 115 S.Ct. 1920, 131 L.Ed.2d 985. In *First Options*, one of the parties resisting arbitration did not personally sign the agreement to arbitrate; thus, the presumption was against arbitrability, because there were serious doubts that the party resisting arbitration intended to empower the arbitrator to decide anything. See id. This was similar to the situation in *West*, in which this court held that an otherwise valid arbitration clause cannot be used by an unidentified third party to compel arbitration. See *West* at 468, 2007-Ohio-845, 867 N.E.2d 868, quoting *Benjamin v. Pipoly*, 155 Ohio App.3d 171, 2003-Ohio-5666, 800 N.E.2d 50, ¶ 33; *Teramar Corp. v. Rodier Corp.* (1987), 40 Ohio App.3d 39, 41, 531 N.E.2d 721.

{¶ 8} In addition to this common-law principle, R.C. 2711.14 is a statutory provision, which protects nonparties from the effects of arbitration proceedings by requiring that the party seeking to confirm an arbitration award include certain documents with its application to confirm. According to that statute, any party seeking a court order confirming an arbitration award must also file the following papers with the court along with their application:

(A) The agreement, the selection or appointment, if any, of an additional arbitrator or umpire, and each written extension of the time within which to make the award;

(B) The award;

(C) Each notice, affidavit, or other paper used upon an application to confirm, modify, or correct the award, and a copy of each order of the court upon such an application.

R.C. 2711.14.

{¶ 9} We interpret R.C. 2711.14 to require that both the arbitration agreement and the actual award must accompany any application to confirm an arbitration award. See *MBNA Am. Bank, N.A. v. O'Brien*, 168 Ohio App.3d 137, 2006-Ohio-3757, 858 N.E.2d 1220, ¶ 11.

{¶ 10} In this case, Worldwide attached only a generic card-member agreement from Direct Merchants Credit Card Bank to its application. Not only is the agreement unsigned, but more importantly, Worldwide failed to submit any document suggesting that Easterling was a card member.

{¶ 11} Easterling has no recollection of applying for or using the credit card in question. She suspects that the card may have belonged to her ex-husband. On these facts, the party seeking to confirm the arbitration award must submit some documentary evidence demonstrating that Easterling was a party to the purported agreement to arbitrate. Here, that meant that Worldwide should have also attached a signed credit-card application to the agreement or at least an affidavit of a person with personal knowledge that Easterling had signed such a credit-

card agreement. If Easterling was not a party to the card-member agreement, Worldwide cannot now enforce the arbitration award against her.

{¶ 12} Worldwide cites a litany of cases, from Ohio and federal courts, which specifically stand for the proposition that arbitration agreements do not have to be signed to be enforceable. See, e.g., *Brumm v. McDonald & Co. Secs., Inc.* (1992), 78 Ohio App.3d 96, 102, 603 N.E.2d 1141. Worldwide's reliance on this line of cases is misplaced. Regardless of whether or not a signed copy of the arbitration agreement may be *necessary* to make an arbitration clause enforceable, unsigned agreements are not automatically *sufficient* to compel arbitration without some proof that a party agreed to arbitration. Here, the problem with the purported agreement to arbitrate is much bigger than whether or not it was signed—there is no evidence that Easterling was a card member or a party to the agreement to arbitrate. Thus, the principal holding from *West* applies: courts will enforce arbitration clauses only upon the actual parties to the arbitration agreement. See *West*; *Benjamin* at ¶ 33; *Teramar Corp.* at 41, 531 N.E.2d 721; cf. *Midland Funding NCC–2 Corp. v. Johnson*, 5th Dist. No. 07 CA 29, 2008-Ohio-3900, 2008 WL 2954286, ¶ 15, 16 (holding that a credit-card issuer's failure to strictly comply with R.C. 2711.14 precluded the trial court from considering the application for enforcement of the award).

{¶ 13} Having found that Worldwide failed to comply sufficiently with the requirements of R.C. 2711.14 in its application to confirm the arbitration award, we sustain the second assignment of error. This renders assignments of error one, three, and four moot. Accordingly, we reverse the judgment of the trial court and remand this matter to that court for further proceedings consistent with this decision.

Judgment reversed
and cause remanded.

BROWN and SADLER, JJ., concur.