[Cite as *A & J Plumbing, Inc. v. Huntington Natl. Bank*, 2014-Ohio-5707.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**LAKE COUNTY, OHIO**

| | | |
|---|---|---|
| A & J PLUMBING, INC., | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2014-L-023** |
| HUNTINGTON NATIONAL BANK, et al., | : | |
| Defendants-Appellees. | : | |

Civil Appeal from the Lake County Court of Common Pleas, Case No. 12 CV 001183.

Judgment: Affirmed.

*Frederick L. Zuch*, 7343 Chillicothe Road, Mentor, OH 44060 (For Plaintiff-Appellant).

*Kirk W. Roessler* and *Douglas M. Eppler*, Ziegler Metzger LLP, 925 Euclid Avenue, Suite 2020, Cleveland, OH 44115-1441 (For Defendant-Appellees).

THOMAS R. WRIGHT, J.

{¶1} This accelerated-calendar appeal stems from a final judgment of the Lake County Court of Common Pleas, granting summary judgment in favor of appellee, the North American Specialty Insurance Company, on two claims for enforcement of surety bonds. Appellant, A & J Plumbing, Inc., challenges the trial court's legal determination that it was not entitled to recover under the surety bonds because the two underlying mechanic's liens are invalid. For the following reasons, the court's ruling is affirmed.

{¶2} The relevant facts of this case are not in dispute. Wilshire Homes, Inc. is engaged in the business of residential home construction. In 2006, it purchased two

parcels of property in Lake County for the purpose of building a single-family residence on each. The first parcel was on Cambden Crossing Way in Concord, Ohio, while the second property was on Jennings Drive in Leroy, Ohio.

{¶3} To finance the construction of both homes, Wilshire Homes obtained two commercial loans from Huntington National Bank. In each transaction, Wilshire Homes executed an open-end mortgage in favor of Huntington National Bank on each parcel. Each mortgage was duly recorded.

{¶4} In each of the two projects, Wilshire Homes hired appellant to install the plumbing. When work on both projects was finished in early 2009, appellant submitted its final bill in accordance with the underlying contracts. Since Wilshire Homes could not sell either of the homes, appellant was never paid for the plumbing work.

{¶5} In June 2009, appellant submitted affidavits with the clerk of courts for the purpose of obtaining mechanic's liens on each of the parcels. Although both liens were duly recorded, appellant did not take steps necessary to perfect the liens. As a result, copies of the affidavits were never served upon Wilshire Homes, and copies were never posted on either of the subject parcels.

{¶6} No further action was taken in regard to the mechanic's liens over the next thirty months. In 2011, appellant and Huntington National Bank were named as parties in a tax foreclosure action on the "Cambden Crossing" property. While this action was pending, Wilshire Homes and its realtor found a potential buyer for that parcel. In order to facilitate the sale, the realtor attempted to negotiate a final settlement of all pending liens on the "Cambden Crossing" property, including the liens held by appellant and Huntington National Bank. Ultimately, no settlement was reached because appellant would not agree to certain terms sought by Huntington National Bank. Therefore, the

proposed sale of the property was never finalized, and a final order of foreclosure was issued in the "tax" action.

{¶7} In February 2012, Huntington National Bank filed with the common pleas court two applications for approval of bonds to discharge the mechanic's liens on each of the properties. Attached to each application was a surety bond issued by appellee for the total amount owed under the respective lien. Each bond provided that payment under the bond was conditioned upon a subsequent adjudication that appellant has a valid claim against the subject property. Upon due consideration, the common pleas court approved both applications, ordering that the liens be discharged and that the bonds be substituted as the security for the underlying debts.

{¶8} In compliance with the requirements of the bonds, appellant initiated a civil action against appellee, Huntington National Bank, Wilshire Homes, and three other defendants. Under the first four claims of its complaint, appellant sought recovery from Wilshire Homes for the total amount owed for the plumbing work. These claims were based upon theories of breach of contract, amounts on account, and quantum meruit. Appellant's fifth claim sounded in tortuous interference with a contractual relationship, and was predicated upon the events surrounding the attempted settlement negotiations concerning the liens on the "Cambden Crossing" property. Under its sixth and seventh claims, appellant sought recovery on the bonds issued by appellee.

{¶9} The majority of the underlying proceedings pertained solely to appellant's "tortuous interference" claim. As to the two "bond" claims, the discovery process was short. As part of its responses to Huntington National Bank's requests for admissions, appellant made the following admissions: (1) after filing its affidavits for the mechanic's liens on both properties, it did not serve copies of the affidavits upon Wilshire Homes;

3

and (2) it also did not post copies of the affidavits upon either of the subject properties. These admissions were verified by appellant's vice president.

{¶10} Based solely upon the admissions, appellee moved for summary judgment on the two "bond" claims. Citing R.C. 1311.07, appellee first argued that the failure to serve or post the affidavits rendered the two mechanic's liens invalid. Appellee further argued that, in the absence of valid liens, appellant was not entitled to recovery under the bonds for any amount owed by Wilshire Homes.

{¶11} In responding to the summary judgment motion, appellant did not contest the fact that the mechanic's liens were invalid as a result of the failure to comply with R.C. 1311.07. Nevertheless, appellant contended that it could still seek recovery under the bonds because the invalidity of the liens would have no effect upon the merits of its claims against Wilshire Homes. In support, appellant emphasized that the wording of the bonds referred to the existence of a valid "claim" against the properties, not a valid "lien."

{¶12} After appellee submitted a reply brief on the matter, the trial court issued its order granting summary judgment against appellant on both "bond" claims. Citing R.C. 1311.11(C), the trial court noted that, once a surety bond is approved, it is merely intended to act as a substitute for the mechanic's lien. Based upon this, the court held that appellant must be able to establish the validity of its liens on the two parcels before it could recover under the bonds. Thus, since appellant's liens were invalid due to the lack of service or posting of the affidavits, appellant could not prove a set of facts under which it would be entitled to the funds covered by the bonds.

{¶13} Immediately following the issuance of the foregoing order, the trial court entered a final judgment in favor of appellant on its four claims against Wilshire Homes.

4

The entry of the latter decision had the effect of disposing of all remaining claims in the action, thereby making the summary judgment determination a final appealable order. In only appealing the trial court's ruling on its two "bond" claims, appellant asserts one assignment of error for review:

{¶14} "The trial court committed prejudicial error by concluding as a matter of law, pursuant to R.C. 1311.11, that a claim against real property cannot exist without a valid original lien."

{¶15} Under this assignment, appellant does not contest the fact that, by failing to either serve its affidavits for the mechanic's liens upon Wilshire Homes or post them at the respective properties, it did not follow the necessary procedure in R.C. 1311.07 for obtaining such a lien. Consequently, neither of the underlying liens was ever valid and enforceable. Despite this, appellant still argues it was entitled to go forward on its "bond" claims because the invalidity of the liens had no effect upon its right to enforce its judgment against Wilshire Homes under the bonds. Specifically, appellant contends that it has the right to recover under the bonds so long as it can prove that it has never been paid for the plumbing work rendered on the two properties.

{¶16} R.C. 1311.11 delineates the procedure an owner or mortgagee of property can follow to have a mechanic's lien removed from its record of title. Subsections (A) and (B) generally provides the means by which the owner or mortgagee can force the lienholder to immediately bring a civil action to resolve the underlying dispute between the parties. Under subsection (A), the owner or mortgagee can serve notice upon the lienholder that he is required to "commence suit on the lien" within sixty days. If proper service of the notice is achieved and an affidavit verifying such service is filed with the county recorder, subsection (B) provides: "If the lienholder fails to commence suit upon

5

the lien within sixty days after completion of service upon him of the notice to commence suit, or if the suit is commenced but dismissed with prejudice before adjudication, the lien is void and the property wholly discharged from the lien."

{¶17} R.C. 1311.11(C) states a separate procedure under which a mechanic's lien can be declared void even before the lienholder has been compelled to commence the action on the underlying dispute. Specifically, subsection (C) allows for the lien to be replaced by a bond, cash deposit, or other reasonable security. In order for this to occur, the owner or mortgagee of the property must file with the common pleas court an application for approval of the new security. After holding a hearing on the matter, the common pleas court must decide whether the new security is "sufficient" to protect the lienholder's interest to the same extent as the lien. As to the effect of a judgment of approval, R.C. 1311.11(C)(3) provides: "As of the date of the entry of approval, the security of the bond, cash deposit, * * * or other reasonable security shall be substituted for the security of the lien, and the lien is void and the property wholly discharged from the lien."

{¶18} Focusing upon the word "void" in the foregoing provision, appellant argues that, since the mechanic's lien no longer exists, any problem with the enforceability of the lien has no effect upon the lienholder's right to recover under the bond. However, this argument fails to account for the fact that the provision also states that the bond or other new security is meant to act as a mere substitute for the lien. To this extent, any obligation stemming from the bond will always be based upon the prior existence of the lien.

{¶19} Given the nature of its provisions, the purpose of R.C. 1311.11(C) is to give a landowner or mortgagee the ability to clear the title to the subject real estate.

6

*See In re Mechanics' Lien of Whitta*, 7 Ohio App.3d 153, 156 (3d Dist.1982).  Clearly, in order for this purpose to be served, the lien on the real estate must be void once the bond has been approved.   Moreover, since the bond is viewed as a substitute for the lien, it follows that the surety on the bond steps into the "shoes" of the owner or mortgagee of the property.  Thus, in the context of an action based upon a mechanic's lien, the surety on the bond is entitled to invoke all "mechanic's lien" defenses available to the landowner.  *Midwest Curtainwalls, Inc. v. Pinnacle 701, LLC*, 8th Dist. Cuyahoga No. 92269, 2009-Ohio-3740, ¶59.   Thus, if the mechanic's lien would not have been enforceable as invalid, the surety cannot be held responsible to pay on the bond. *Construction One, Inc. v. Shore Thing, Inc.*, 8th Dist. Cuyahoga No. 81135, 2003-Ohio-1339, ¶25.

{¶20}  As part of its interpretation of R.C. 1311.11, appellant maintains that, by moving the common pleas court to approve the two bonds in lieu of the liens, appellee essentially waived its right to challenge the validity of the liens.  In support of this point, appellee cites R.C. 1311.11(A).  However, subsection (A) only has provisions relating to the service of the notice to the lienholder to commence a lawsuit; it does not have any provision regarding the effect of substituting a bond for the lien.  Furthermore, our review of the other statutes in R.C. Chapter 1311 does not reveal any provision stating that a challenge to a mechanic's lien must be raised in a particular type of proceeding or within a particular time limit.  Finally, appellant has not cited any case law to support its contention that a landowner or mortgagee waives all challenges to the validity of the lien by invoking the procedure under R.C. 1311.11(C).

{¶21}  In support of its basic argument, appellant further notes that, pursuant to R.C. 1311.11(B)(3), if a lien becomes void as a result of the lienholder's failure to bring

7

the required lawsuit within sixty days, "the claim upon which the lien was founded is not prejudiced * * *." This provision simply restates the general principle that the merits of the underlying "debt" dispute will not be affected by any flaw in the security; i.e., if the lienholder is successful in the separate proceeding on the debt, it simply means that the judgment debt will be unsecured. To this extent, the cited provision is irrelevant to the proper interpretation of R.C. 1311.11(C).

{¶22} As a separate argument, appellant submits that its right to recover under the two surety bonds should be controlled solely by the wording of those documents. Appellant emphasizes that the bonds do not employ the term "lien" in describing when appellee will be liable to pay, but instead only uses the word "claim." Appellant argues that the term "claim" could only mean the claim it has against Wilshire Homes, and that the only condition it must satisfy to collect under the bonds is to show that it has prevailed in its action against Wilshire Homes.

{¶23} The first paragraph of each bond states that Huntington National Bank and appellee agree to pay appellee the amount of the bond upon the condition that "if [appellant] shall commence suit upon the Bond and * * * the court shall adjudge and decree that that said claim is a valid claim and [Huntington] shall pay the sum for which [appellant] is adjudged and decreed by the Court to have had as a valid claim against the property, * * *." In light of the quoted language, the word "claim" is not intended to refer to appellant's claim against Wilshire Homes, but instead refers to a separate claim to enforce the bond itself. In the beginning, the passage refers to the commencement of a lawsuit "upon the Bond." At the end, the passage refers to a "valid claim against the property."

{¶24} Accordingly, appellant's interpretation of the quoted language is incorrect;

8

payment is conditioned upon a court's adjudication that a valid claim has been brought against the bond. In this case, appellant cannot bring a valid claim under either bond because the underlying mechanic's liens are invalid.

{¶25} Based on the foregoing, the sole assignment lacks merit. The judgment of the Lake County Court of Common Pleas is affirmed.

DIANE V. GRENDELL, J., concurs,

COLLEEN MARY O'TOOLE, J., concurs with a Concurring Opinion.

_____

COLLEEN MARY O'TOOLE, J., concurs with a Concurring Opinion.

{¶26} I concur with the well-reasoned opinion of the majority. I write separately simply to emphasize that the failure of appellant's action against the bonds, due to its failure to perfect its liens on the subject properties, does not in any way affect the validity of its underlying contractual claims against Wiltshire Homes. *Jaric, Inc. v. Chakroff*, 63 Ohio App.3d 506, 511-512 (10th Dist.1989). It appears the trial court granted appellant default judgment against Wiltshire on these claims, which may be made a lien against Wiltshire. *See, e.g.*, R.C. 2329.02.

9