[Cite as *Broadway Concrete Invests, L.L.C. v. Masonry Constracting Corp.*, 2022-Ohio-530.]

[Vacated opinion. Please see 2022-Ohio-19.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

BROADWAY CONCRETE           :
INVESTMENTS, L.L.C.,

                                  :

         Plaintiff-Appellee,

                                  :           No. 110420

         v.

MASONRY CONTRACTING CORP.,       :
ET AL.,

         Defendants-Appellants.      :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART; REVERSED AND REMANDED
               IN PART
**RELEASED AND JOURNALIZED:** February 24, 2022

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-18-903809

---

### *Appearances:*

Stark & Knoll Co., L.P.A., Michael L. Fortney, Alexandra N. Nienaber, and Richard P. Schroeter, Jr., *for appellee.*

The Law Offices of David M. Leneghan, David M. Leneghan, K. Scott Carter, and Catana Chrostowski, *for appellants.*

ON RECONSIDERATION[1]

KATHLEEN ANN KEOUGH, P.J.:

{¶ 1} Defendants-appellants, Masonry Contracting Corp. ("MCC") and Western Surety Company ("Western Surety"), appeal the trial court's judgment, rendered after a bench trial, that found in favor of plaintiff-appellee, Broadway Concrete Investments L.L.C. d.b.a. Pompili Precast Concrete ("Pompili") on Pompili's claims for breach of contract and violation of Ohio's Prompt Payment Act and awarded Pompili $82,388.51 in damages, plus $21,230.86 in interest and $101,945.05 in attorney fees. For the reasons that follow, we affirm in part and reverse and remand in part for further proceedings consistent with this opinion.

## I. Background

{¶ 2} This case arises out of the Nord Family Greenway construction project on the Case Western Reserve University campus. The prime contractor for the project was Gilbane Building Company. Gilbane subcontracted with Platform Cements, Inc. d.b.a. Platform Contracting ("Platform") for Platform to perform excavation, site concrete, and hard cast (including precast concrete) for the project. Platform subcontracted the precast concrete work to MCC, which in turn subcontracted the supply of the precast concrete to Pompili by way of a purchase order in the amount of $366,830.75 executed on October 26, 2016.

---

[1] The original decision in this appeal, *Broadway Concrete Investments, L.L.C. v. Masonry Contracting Corp.,* 8th Dist. Cuyahoga No. 110420, 2022-Ohio-19, released on January 6, 2022, is hereby vacated. This opinion, issued upon reconsideration, is the court's journalized decision in this appeal. *See* App.R. 22(C); *see also* S.Ct.Prac.R. 7.01.

{¶ 3} The evidence at trial demonstrated that prior to receiving the purchase order from MCC, Pompili submitted a written quote for the precast work directly to Platform. A copy of Pompili's quote, which included various contract terms, was attached to the signed purchase order between MCC and Pompili, and a handwritten note on the purchase order stated, "Note: see Broadway Concrete LLC Terms & Conditions – Attached as Information Only." Likewise, the written terms of the purchase order stated, "Special Conditions: See attached Quotation #0209-001 for reference only." Each page of the attached quotation from Pompili was marked "INFORMATION ONLY."

{¶ 4} With respect to payment of Pompili's invoices by MCC, the purchase order required all invoices to be submitted to MCC by the 25th of the month "in order for the invoices to be put on the appropriate draws. Receiving invoices after the 25th will delay your payment." The contract stated further that MCC "will issue checks within 5 banking days after we receive payment."

{¶ 5} MCC submitted three pay applications to Platform in 2016: the first in September, another in November, and the third in December. Pompili had not yet submitted any invoices to MCC and accordingly, none of these pay applications included any Pompili invoices. Matthew Birch, owner and president of MCC, testified at trial that MCC's first pay application to Platform, in the amount of $50,000, was the result of an agreement with Platform that he would reduce his quote by $50,000 and Platform would give him an up front payment to help his start-up company. Birch testified that when he submitted his original bid to Platform, he met with Jason

Klar, the owner of Platform, who told him that his bid was high. Birch told Jason that he could reduce his bid if Platform paid him $50,000 to help start his newly formed company. Birch testified that Jason agreed, paid him the agreed-upon $50,000, and told him to invoice Platform.

{¶ 6} Jeremy Kler, the project manager for Platform on the project, was called as a witness by Pompili. Kler testified that Jason negotiated Platform's contract with MCC and agreed to pay MCC $50,000 up front for its first pay application. Kler testified that he reviewed the pay application and approved it, even though none of the billed items had been completed at that point. Kler likewise confirmed that MCC's initial quote to Platform was for $674,980, but the contract executed between Platform and MCC was for $624,980. Platform paid MCC's first pay application of $50,000 on October 13, 2016 — the same day it executed its contract with MCC and 13 days before MCC and Pompili executed their subcontract.

{¶ 7} Pompili submitted its first invoice in the amount of $3,500 to MCC on January 31, 2017. MCC included Pompili's invoice on its fourth pay application to Platform on January 25, 2017.[2] Platform paid MCC's fourth pay application on May 4, 2017; MCC paid Pompili's invoice on April 20, 2017, 14 days before it received payment from Platform.

---

[2] Birch testified that he included money for Pompili in his fourth pay application before receiving Pompili's invoice because he knew Pompili was working on shop drawings.

{¶ 8} Pompili submitted its second invoice in the amount of $20,000 on April 20, 2017. MCC included Pompili's invoice on its seventh pay application to Platform on April 25, 2017. MCC received a partial payment of its total pay application from Platform on June 17, 2017, and tendered the full amount of Pompili's invoice to Pompili on June 21, 2017.

{¶ 9} Pompili's third invoice, dated May 19, 2017, was for $30,000 and included on MCC's eighth pay application to Platform on May 25, 2017. MCC received payment from Platform on August 1, 2017, and paid Pompili on August 3, 2017.

{¶ 10} Pompili's fourth invoice, dated June 29, 2017, in the amount of $5,000, was included on MCC's ninth pay application to Platform dated June 25, 2017. MCC paid Pompili on August 31, 2017, even though it did not receive payment from Platform on this application until September 27, 2017.

{¶ 11} Pompili's fifth invoice, dated August 15, 2017, in the amount of $70,000, was included on MCC's 11th pay application submitted to Platform on August 25, 2017. MCC paid Pompili on November 27, 2017, 17 days before it received payment from Platform on December 4, 2017.

{¶ 12} Pompili's sixth invoice, dated September 18, 2017, for $36,500, was included on MCC's 12th pay application to Platform on September 25, 2017. MCC paid Pompili on November 27, 2017, 17 days before receiving payment from Platform on December 14, 2017.

{¶ 13} On October 14, 2017, Pompili submitted its seventh invoice for $110,000. MCC included the invoice on its 13th pay application to Platform. Platform

rejected the application, however, and informed MCC the owner had decided it would no longer pay for material that was stored off-site and would pay only for material that was installed or on-site. Platform advised Birch to revise his pay application. Birch conducted an on-site survey and concluded that Pompili's invoices were overstated as compared to what material was on-site or installed. Platform agreed with Birch's conclusion. Birch then revised Pompili's invoice downward to reflects its overbilling and submitted a revised 13th pay application to Platform. Platform paid this pay application on January 18, 2018, but MCC made no payment to Pompili because of its overbilling credit.

{¶ 14} In November 2017, Pompili issued MCC a credit in the amount of $56,102.31 for its overbilling. Pompili did not submit any invoices to MCC for November 2017, December 2017, and January 2018. Birch testified that during these months, he resubmitted Pompili's October invoice, as adjusted, to Platform on MCC's 14th, 15th, and 16th pay applications. MCC included $12,500 for Pompili on pay application 14, which was submitted to Platform on November 25, 2017, and paid by Platform on January 18, 2018. MCC did not pay Pompili upon receipt of Platform's payment because the $12,500 invoiced for Pompili on pay application 14 was offset by a $12,500 credit on pay application 13. MCC invoiced $5,000 for Pompili on pay application 15, which it submitted to Platform on December 25, 2017. MCC paid Pompili on January 31, 2018, before Platform paid the application on March 14, 2018. MCC included $30,122.60 for Pompili on pay application 16, which was submitted to

Platform on January 25, 2018. Platform paid MCC on March 14, 2018; MCC had already paid Pompili on January 31, 2018.

{¶ 15} Pompili's next invoice in the amount of $88,000 was submitted to MCC on February 28, 2018. MCC included the invoice on payment application 17 to Platform, who tendered payment to MCC on April 24, 2018. MCC sent a check to Pompili on April 30, 2018.

{¶ 16} On March 30, 2018, Pompili invoiced MCC $15,000. On April 23, 2018, it invoiced MCC $8,867.81, and on May 24, 2018, it invoiced MCC $2,500 as its final billing on the project.

{¶ 17} Birch testified that the last invoice he submitted to Platform for Pompili was its March 30th invoice because Pompili had already invoiced $303,000 and been paid $260,000 on its contract, so it was a good time to "hold off on payment and invoicing" to close out the contract — meaning to finalize what changes had been made to the contract requirements due to change orders or work authorizations that would affect the contract price. However, on April 30, 2018, the same day Birch sent Pompili a check for its February 28, 2018 invoice, Pompili filed a mechanic's lien on the project. MCC stopped payment on the check and escrowed the money with Platform, who ultimately paid Pompili $80,000.

{¶ 18} Pompili filed suit against MCC, Platform, Case Western Reserve University, and Travelers Casualty and Surety Company of America. Pompili subsequently amended its complaint, which omitted Case Western Reserve University but added Western Surety as a defendant. Pompili later dismissed all its

claims against Platform and Travelers.  MCC later substituted a bond with Western Surety for the mechanic's lien.

{¶ 19}  In its amended complaint, Pompili asserted a breach-of-contract claim against MCC, contending that MCC had breached the contract by failing to pay it $82,388.51 still owing pursuant to the terms of the contract.  Pompili also asserted a claim against MCC for violation of Ohio's Prompt Payment Act, alleging that MCC did not pay its invoices within ten days of receiving payment from Platform, as required by the Act.  Pompili alleged that it was entitled to interest and attorney fees as a result of MCC's violation of the Act.

{¶ 20}  MCC filed an answer and two counterclaims:  one alleging Pompili's breach of contract for its failure to perform timely product deliveries, resulting in delays and additional work in the amount of $37,537.09 incurred by MCC; and tortious interference with MCC and Platform's contract relating to Pompili's failure to timely deliver the precast material to MCC, causing project delays, and its conduct during the project in entering into a direct contract with Platform to provide certain precast material for the project not specified in its contract with MCC.  MCC dismissed the tortious interference claim at trial.

{¶ 21}  A bench trial commenced against MCC and Western Surety in August 2019.  In its subsequent opinion and order, the trial court rendered judgment in favor of Pompili on its breach-of-contract claim, finding that MCC breached the contract by failing to pay Pompili $82,388.51, which the court concluded was the amount due on the contract according to Pompili's invoices less the $80,000 paid to Pompili by

Platform and the $180,110.34 paid to Pompili by MCC. The court rendered judgment against MCC on its breach-of-contract claim.

{¶ 22} With respect to the alleged Prompt Pay Act violation, the court found that MCC did not pay any of Pompili's invoices within the ten-day payment period required by the Act. The court awarded $21,230.86 to Pompili in interest for MCC's late payments, and ordered that interest would accrue at $26.64 per day until paid in full, which the court calculated to represent $82,388.51 at 18 percent interest over 365 days. After a hearing, the court also awarded Pompili $101,945.05 in attorney fees.

{¶ 23} This court dismissed MCC's first appeal for lack of a final appealable order because the trial court's judgment did not resolve Pompili's claim against Western Surety. *Broadway Concrete Invest., L.L.C. v. Masonry Contr. Corp.*, 8th Dist. Cuyahoga No. 109839, 2021-Ohio-1813. The trial court subsequently entered an order that Western Surety was obligated to satisfy MCC's judgment up to the amount of the bond, and this appeal followed.

## II. Law and Analysis

### A. Ohio's Prompt Payment Act

{¶ 24} In its first assignment of error, MCC contends that the trial court erred in finding that it violated Ohio's Prompt Payment Act, which is set forth in R.C. 4113.61.

{¶ 25} The interpretation of a statute involves a purely legal question. Thus, an appellate court conducts a de novo review of the trial court's judgment interpreting

a statute without according any deference to the trial court's interpretation. *Worldwide Asset Purchasing L.L.C. v. Easterly*, 186 Ohio App.3d 478, 2009-Ohio-6196, 928 N.E.2d 1148, ¶ 48 (10th Dist.).

{¶ 26} We apply a manifest weight standard, however, to the trial court's findings of fact. *Sonis v. Rasner*, 8th Dist. Cuyahoga No. 101929, 2015-Ohio-3028, ¶ 52. In assessing whether a verdict in a civil bench trial is against the manifest weight of the evidence, we examine the entire record, weigh the evidence and all reasonable inferences, consider the witnesses' credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the verdict must be overturned and a new trial ordered. *Sonis* at ¶ 53, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). In weighing the evidence, we are guided by a presumption that the findings of the trier of fact are correct. *Sonis* at ¶ 54, citing *Seasons Coal v. Cleveland*, 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984). Every reasonable presumption must be made in favor of the judgment and the findings of fact. *Id.*, citing *Seasons Coal* at 80, fn. 3.

{¶ 27} Ohio's Prompt Payment Act is set forth in R.C. 4113.61, captioned "Procedure when subcontractor or material supplier submits request for payment to contractor or intermediate subcontractor in time for inclusion in pay request to owner or contractor." As relevant to this case, R.C. 4113.61(A)(2)(b) provides:

> (2) If a * * * lower tier material supplier submits an application or request for payment or an invoice for materials to a subcontractor * * * in sufficient time to allow the subcontractor * * * to include the application, request, or invoice in the subcontractor's * * * own pay

request submitted to a contractor * * * the subcontractor * * * within ten calendar days after receipt of payment from the subcontractor * * * shall pay to the:

* * *

(b) Lower tier material supplier, an amount that is equal to all or that portion of the invoice for materials which represents the material furnished by the lower tier material supplier.

{¶ 28} The Prompt Payment Act "is a penal statute and must be strictly construed." *Intercargo Ins. Co. v. Mun. Pipe Contrs., Inc.,* 127 Ohio Misc.2d 48, 2003-Ohio-7363, 805 N.E.2d 606, ¶ 24 (C.P.) (The Act is penal in nature because it imposes an 18 percent fine, which is well over the market rate, for failing to perform a required act, and allows the trial court to impose a sanction of attorney fees.); *Wright v. State*, 69 Ohio App.3d 775, 779, 591 N.E.2d 1279 (10th Dist.1990) (a penal statute is one that imposes a penalty).

{¶ 29} A penal statute "should be construed according to its exact and technical meaning, recognizing nothing that is not expressed, and limiting its application to cases clearly described within the words used." *Commercial Credit Co. v. Schreyer*, 120 Ohio St. 568, 575, 166 N.E. 808 (1929). Penal statutes "'may not be extended by implication to cases not falling within their terms.'" *Macedonia v. Burns*, 9th Dist. Summit No. 20404, 2001 Ohio App. LEXIS 2288, 8 (May 23 2001), quoting *Cleveland v. Jorski*, 142 Ohio St. 529, 53 N.E.2d 513 (1944), paragraph one of the syllabus. When strictly construing a statute, "a court cannot introduce an exception to the statute which the legislature has not authorized." *Pearl v. Koch*, 5 Ohio Dec. 5, 8, 1894 Ohio Misc. LEXIS 192 (1894). The "statute must be read without expansion

beyond its letter [and] is to be confined to such subjects or applications as are obviously within its terms and purpose." *Mathers v. Bull*, 9 Ohio Dec. 408, 410, 1898 Ohio Misc. LEXIS 187 (Nov.1898). When construing a statute, courts must give the words therein "their usual, normal, and/or customary meanings." *Washington Cty. Home v. Ohio Dept. of Health*, 178 Ohio App.3d 78, 2008-Ohio-4342, 896 N.E.2d 1011, ¶ 28 (4th Dist.).

{¶ 30} The language of the Prompt Payment Act is clear and unambiguous. If a lower tier material supplier submits an invoice to a subcontractor in time for that subcontractor to include the invoice in its pay application to the contractor, the subcontractor must pay the lower tier material supplier within ten days after the subcontractor receives payment from the contractor. Thus, as applicable to this case, if Pompili submitted an invoice to MCC in time for MCC to include the invoice in its pay application to Platform, MCC was required to pay Pompili within ten days after receiving payment from Platform. MCC would be in violation of the Act if it did not do so.

{¶ 31} The trial court concluded that MCC violated the Act because it submitted a pay application for $50,000 to Platform before Pompili had completed any work and was paid for this invoice on October 13, 2016. The court found that Pompili submitted its first invoice for shop drawings in the amount of $3,500 on January 31, 2017, and even though MCC had previously been paid by Platform for that work, MCC did not pay Pompili for this invoice until May 3, 2017. The court further concluded that MCC submitted its second and third pay applications to

Platform prior to receiving invoices from Pompili and was paid on those pay applications. Accordingly, the court concluded that each of Pompili's invoices had been "prepaid" by Platform to MCC before Pompili submitted the invoice to MCC, and therefore, MCC was late with each payment it made to Pompili and, thus, in violation of the Prompt Payment Act.

{¶ 32} However, the trial court's interpretation of the law and its application of the law to the facts of this case was incorrect. The Prompt Payment Act provides that a subcontractor will be liable for a prompt payment violation if: (1) a material supplier submits an invoice to the subcontractor in time for the subcontractor to include the invoice on its pay application; (2) the subcontractor receives payment on the application; and (3) the subcontractor fails to pay the material supplier's invoice within ten days of receiving payment on the application. It is clear from the statute that the ten-day prompt payment clock begins to run on the date the upstream contractor tenders payment to a lower tier subcontractor on the subcontractor's pay application containing an invoice from a material supplier.

{¶ 33} Here, however, the trial court read into the Act a requirement that MCC was required to pay Pompili from funds it received on pay applications that did not include any Pompili invoices. The trial court concluded that even though MCC received funds from Platform on a pay application it submitted before MCC and Pompili executed their contract, and months before Pompili submitted its first invoice, because MCC had received what the court concluded were "project funds," it was obligated to pay Pompili throughout the project within ten days of its *receipt of*

*Pompili's invoices.* That is not the law. The ten-day clock clearly and unambiguously begins to run upon payment by the contractor of the subcontractor's pay application that contained the material supplier's invoice; it does not start running when the lower tier material supplier submits its invoice.

{¶ 34} The trial court included a chart with its findings of fact and conclusions of law that set forth the dates of Pompili's invoices, the amount of each invoice, and the due date for payment by MCC. But the trial court's due dates for the invoices are inconsistent. The court found that MCC was required to pay Pompili's first four invoices within ten days of MCC's receipt of the invoice. But then, without explanation, the court found that Pompili's fifth invoice, which was dated August 15, 2017, had a due date of October 8, 2017. The court concluded that Pompili's sixth invoice, dated September 18, 2017, had a due date of October 28, 2017; its seventh invoice, dated October 14, 2017, had a payment due date of January 20, 2018; and its eighth invoice, dated February 23, 2018, was due March 5, 2018. The court gave no explanation or reason for why some invoices were due in 10 days from receipt of the invoice but others were not due for nearly 30 days. Further, and most importantly, the chart did not include any reference to when MCC submitted a pay application to Platform, which Pompili invoices were included in those pay applications, when MCC was paid on the pay applications, and the amount of the payment. Thus, the trial court's ruling the MCC had violated the Act was not premised on the conditions required by the Act to find a violation.

{¶ 35} Pompili claims there was no error in the trial court's judgment, however, because there is no requirement in the Act that the material supplier's invoice be included on the subcontractor's *next* invoice in order to be paid; rather, the only requirement is that the material supplier submit its invoice in time for the invoice to be included in the subcontractor's pay application to the contractor. It contends that MCC was prepaid for all of Pompili's work, beginning with the $50,000 payment to MCC from Platform after MCC's first pay application, and was afforded sufficient time to include all of Pompili's invoices in its pay applications. This argument fails. There is no language in the Act that requires a subcontractor to pay a lower tier material supplier from sums received on pay applications submitted before the material supplier submits an invoice or before the subcontractor and material supplier even entered into a contract. Because no invoices from Pompili were included in MCC's first, second, or third pay applications, MCC had no prompt payment obligations to Pompili under the Act regarding those applications.

{¶ 36} Pompili contends that we should nonetheless affirm the trial court because adopting an interpretation of the Act that allows a subcontractor to submit pay applications before the lower tier subcontractor or material supplier submits an invoice would allow the subcontractor to avoid its obligations under the Prompt Payment Act by being prepaid for the lower tier subcontractor or material supplier's work. The Prompt Payment Act does not address this situation and under rules of strict construction, we cannot read anything into the Act that is not there. The Act clearly conditions prompt payment on the receipt of payment on the pay application

that contained the material supplier's invoice. For the trial court to read anything else into the Act was an error of law.

{¶ 37} Moreover, it does not appear that MCC was trying to avoid its payment obligations to Pompili. The evidence at trial demonstrated that MCC consistently submitted Pompili's invoices on its pay applications to Platform and, after receiving payment from Platform, paid Pompili.

{¶ 38} To summarize, because none of Pompili's invoices were included with MCC's first three payment applications to Platform, MCC had no prompt payment obligation to pay Pompili's first invoice, dated January 31, 2017, or succeeding invoices, out of funds Platform paid MCC for these pay applications. The trial court's finding that MCC was late with every payment to Pompili because it was prepaid for Pompili's work is contrary to the Act, which clearly provides that the ten-day prompt payment obligation begins to run only after the subcontractor receives payment on a pay application that included the material supplier's invoice. Accordingly, the trial court's judgment finding that MCC violated the Prompt Payment Act is reversed.

{¶ 39} Likewise, the trial court's judgment that MCC owes Pompili interest for its violation of the Act is reversed. The trial court erroneously determined that interest was due on the paid invoices because it concluded, under its flawed interpretation of the Prompt Payment Act, that MCC had been prepaid for Pompili's work and was therefore required to pay Pompili within ten days of receiving its invoices. Similarly, the trial court erroneously concluded that MCC owed interest on the disputed unpaid invoices, even though under R.C. 4113.61(A)(2)(b), "the

subcontractor * * * may withhold amounts that may be necessary to resolve disputed liens or claims involving the work or labor performed or material furnished by the lower tier subcontractor or lower tier material supplier." Our review of the record demonstrates there were ongoing disputes relating to the amount and quality of materials that Pompili delivered to the project. Furthermore, MCC obviously disputed Pompili's mechanic's lien, which Pompili filed on April 30, 2018.

{¶ 40} Finally, the trial court's judgment ordering MCC to pay Pompili's attorney fees as a result of its alleged violation of the Prompt Payment Act is reversed. R.C. 4113.61(B)(2) provides that in making a determination to award attorney fees for a violation of the Prompt Payment Act, the trial court should consider all relevant factors, including (1) the presence or absence of good faith allegations or defenses asserted by the parties; (2) the proportion of the amount of recovery as it relates to the amount demanded; and (3) the nature of the services rendered and the time expended in rendering the services.

{¶ 41} The trial court obviously erred in awarding attorney fees for invoices that MCC timely paid under a strict construction of R.C. 4113.61. Regarding disputed invoices, the trial court found that MCC did not have a good-faith defense for withholding payment to Pompili on any of Pompili's invoices because it was prepaid for Pompili's work under its first payment application. However, as discussed above, MCC's first payment application to Platform is wholly irrelevant to an analysis of whether MCC violated the Prompt Payment Act because no Pompili invoice was included with the payment application. Accordingly, MCC's good faith in withholding

monies from Pompili on any disputed invoices is in no way related to its receipt of payment on its first pay application. Furthermore, as noted above, the record reflects a good-faith dispute regarding Pompili's mechanic's lien. Accordingly, the trial court's determination that MCC had no good-faith defense to paying the disputed invoices is in error.

{¶ 42} The first assignment of error is sustained. The trial court's judgment finding MCC in violation of the Prompt Payment Act and liable for interest and attorney fees is reversed.

## III. Breach of Contract

{¶ 43} The trial court found that Pompili "fully performed its scope of work under the contract" with MCC and that MCC breached the contract by failing to pay Pompili $82,388.51, which the trial court concluded was the amount due on Pompili's invoices after subtracting the $80,000 paid to Pompili by Platform and the $180,110.34 paid by MCC.[3] In its second assignment of error, MCC contends that the trial court erred in finding that it had breached the contract.[4]

---

[3] This amount is inconsistent with a statement by Pompili's counsel contained in a May 11, 2018 memorandum to Case Western Reserve University advising the university of Pompili's mechanic's lien. Counsel stated therein: "As a result of MCC's failure to pay Pompili amounts due pursuant to the contract, Pompili filed the attached Affidavit for Mechanic's Lien. At the time of the filing of the Lien, Pompili was owed $157,272.51 for materials supplied to the project, and Pompili filed a lien in the amount of $113,217.81. Since the filing of the Lien, Platform paid Pompili $80,000, thereby reducing the amount owed to Pompili on the project to $77,272.51."

[4] MCC contends that because the contract terms were ambiguous, the trial court had an obligation to construe the contract terms before finding it had breached the contract, and because it did not do so, its judgment should be reversed. Pompili contends that MCC waived this argument because it did not raise it in the trial court. We need not consider MCC's argument nor determine whether it was waived because under our de

{¶ 44} Contract interpretation is a question of law that is reviewed de novo on appeal. *Delta Fuels, Inc. v. Ohio DOT*, 10th Dist. Franklin Nos. 15AP-28 and 15AP-206, 2015-Ohio-5545, ¶ 39. "To prove a breach of contract, a plaintiff must prove the existence *and terms* of a contract, the plaintiff's performance of the contract, the defendant's breach of the contract, and damages or loss to the plaintiff." (Emphasis added.) *Id.*

{¶ 45} Upon our de novo review, we find that although the trial court correctly determined there was a contract between the parties, it incorrectly determined the terms of that contract. The purchase order from MCC to Pompili was signed by Birch, on behalf of MCC, on October 25, 2016, and by Mark Melvin, on behalf of Pompili, on October 26, 2016. A handwritten notation on the purchase order noted that Pompili's original proposal to Platform was attached to the purchase order "as information only," and each page of the proposal was marked "INFORMATION ONLY." Neither Pompili's proposal nor the proposed joint check agreement (which Jeremy Kler testified was never signed by Platform), were incorporated into the purchase order. Thus, the terms of the contract between MCC and Pompili are contained *only* in the purchase order.

{¶ 46} It appears, however, that the trial court found that various terms of Pompili's attached quotation were part of the contract between MCC and Pompili,

novo review of Pompili's breach-of-contract claim, we conclude that the trial court incorrectly determined the contract terms and then utilized those incorrect terms to find that Pompili performed its duties under the contract.

and relied upon those terms to conclude that Pompili "performed its duties under the contract." For example, in its opinion and order, the trial court stated that "Plaintiff's contract terms specifically exempted all field work including field measuring." But that term is not contained in the purchase order between MCC and Pompili; it is contained in Pompili's quotation attached to the purchase order, which stated: "All field measuring and verification of dimensions on submitted erection drawings shall be the responsibility of the contractor."

{¶ 47} Likewise, the trial court concluded that Pompili "was merely required to produce pieces pursuant to approved shop drawings," and that "[Pompili] required that production would only occur upon final approval of shop drawing[s] by the Project architect." But that is not a term contained in the purchase order between MCC and Pompili; it is found in Item 5 of the General Contract Terms of Pompili's quotation to Platform, which states, "No production shall take place until approved shop drawings are received." As explained above, Pompili's quotation was for information only; its terms were never incorporated into the contract between MCC and Pompili. However, in reliance on this alleged contract term, the court concluded that any "delays in the project were not caused by [Pompili]."

{¶ 48} Accordingly, we find that the trial court erred by incorporating terms from Pompili's quotation into the contract between MCC and Pompili and then applying the evidence presented at trial to those terms. In short, the trial court failed to apply the evidence to the proper contract. The second assignment of error is sustained, and the trial court's judgment is therefore reversed. The matter is

remanded for further proceedings on the breach-of-contract claim consistent with this opinion.

## IV. Mechanic's Lien Bond

{¶ 49} On October 17, 2018, the trial court in Cuyahoga C.P. No. CV-18-900764 issued an order approving the stipulation of Pompili and MCC to Western Surety's bond and rider in the amount of $123,583, and rescinding the mechanic's lien that Pompili had filed on the property. In its third assignment of error, Western Surety argues that the trial court erred in finding that it is liable for a portion of the judgment against MCC.

{¶ 50} Under R.C. 1311.11(C), a mechanic's lien may be replaced by a surety bond. The bond serves as a substitute for the lien and is based upon the prior existence of the lien. *A&J Plumbing, Inc. v. Huntington Natl. Bank*, 11th Dist. Lake No. 2014-L-023, 2014-Ohio-5707, ¶ 18. Therefore, a valid claim cannot be brought against a bond unless there is a valid existing mechanic's lien. *Id.* at ¶ 24.

{¶ 51} One of the statutory requirements to establish a valid mechanic's lien is serving a notice of furnishing on the project owner if the owner has recorded a notice of commencement. *See* R.C. 1311.05 and 1311.05. Western Surety argues that Pompili failed to establish at trial that it timely served a notice of furnishing and, therefore, failed to establish that its lien was valid. Western Surety has waived this argument for purposes of appeal, however.

{¶ 52} First, failure to timely serve a notice of furnishing is an affirmative defense to a mechanic's lien. But neither Western Surety nor MCC raised the

affirmative defense of failure to timely serve a notice of furnishing in their answers to Pompili's first amended complaint. Failure to raise an affirmative defense is a waiver of the defense. *Bell v. Teasley*, 10th Dist. Franklin No. 10AP-850, 2011-Ohio-2744, ¶ 13 (affirmative defenses not raised in the pleadings or an amendment to the pleadings are waived).

{¶ 53} Moreover, it is well settled that a party cannot raise new arguments and legal issues for the first time on appeal, and the failure to raise an issue in the trial court waives that issue for appellate purpose. *Miller v. Cardinal Care Mgmt.*, 8th Dist. Cuyahoga No. 107730, 2019-Ohio-2826, ¶ 23. Neither MCC nor Western Surety presented any evidence or argument at trial that Pompili failed to timely serve the notice of furnishing, nor did they challenge the validity of Pompili's lien in any manner. Although Western Surety cites the testimony of David Schaefer as support for its argument that Pompili failed to serve a notice of furnishing, Schaefer did not testify at trial; he testified in a post-judgment hearing regarding the award of attorney fees. Schaefer's involvement in the case was limited to his expert opinion on the reasonableness of the hourly rate and fees of Pompili's counsel for determining attorney fees and thus, is insufficient to establish that MCC or Western Surety challenged the validity of Pompili's lien at trial.

{¶ 54} Under R.C. 1311.06, to file a valid mechanic's lien, a person shall "make and file for record in the office of the county recorder in the counties in which the improved property is located, an affidavit." Once it is recorded, a copy of the affidavit must be served on the owner of the property. R.C. 1311.07. Pompili

presented evidence at trial through the testimony of Mark Melvin, co-owner of Pompili, that it had taken the necessary steps to properly file its mechanic's lien. Neither MCC nor Western Surety challenged the validity of Pompili's lien at trial and thus, they cannot do so now on appeal. The third assignment of error is overruled.

**{¶ 55}** Affirmed in part; reversed and remanded in part.

It is ordered that the parties share costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

KATHLEEN ANN KEOUGH, PRESIDING JUDGE

MICHELLE J. SHEEHAN, J., and
EMANUELLA D. GROVES, J., CONCUR